LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile:  (510) 444-6698

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| CANDIDO ZAYAS, RUBEN SOTO, ALFREDO RUIZ, JOSE POOT, MILTON LECLAIRE, NIGEL HENRY, RALPH DOMINGUEZ, and MATTHEW BRUGMAN on behalf of themselves individually and others similarly situated, as a class and Subclass,<br><br>Plaintiffs,<br><br>vs.<br><br>SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSEY; UNDER SHERIFF MATHEW FREEAN; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON, SARGEANT DOLLY and John & Jane DOEs, Nos. 1 - 50.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT for INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATION OF CIVIL RIGHTS and OTHER WRONGS**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs CANDIDO ZAYAS, RUBEN SOTO, ALFREDO RUIZ, JOSE POOT, MILTON LECLAIRE, NIGEL HENRY, RALPH DOMINGUEZ, and MATTHEW BRUGMAN now joined by others named within, on behalf of themselves and those they speak and seek to represent herein--

1   -along with those others now named and to be named individually as plaintiffs---for themselves and

2   others, submit this Complaint, as follows.  The allegations in the complaint are based on the

3   knowledge of the Plaintiffs as to themselves and as to conditions and acts which they have

4   personally observed, and on information and belief, including the investigation of counsel, as to all

5   other matters.

6   **PRELIMINARY STATEMENT**

7   1.      This is a civil rights action in which the Plaintiffs, on behalf of themselves and a class of

8   similarly situated individuals, seek relief for Defendants' violations of Plaintiffs' rights and

9   privileges secured by the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States

10  Constitution.

11  2.      Defendant SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT ("SFCSD"), from

12  January, 2017 through to the present,  has implemented a policy, practice and custom through

13  which it has abandoned and abdicated its responsibility to house prisoners at San Francisco County

14  Jail 4 in SFCSD's custody in conditions of even minimal decency.  On a regular basis, SFCSD

15  literally causes the prisoners in its custody at San Francisco County Jail 4 to eat, sleep and live in

16  pools raw sewage containing human feces and urine.  In addition, Prisoners at San Francisco

17  County Jail 4 are on a nearly daily basis denied fresh drinking water and toilet facilities for

18  extended periods.  Without the Court's intervention, SFCSD will continue to implement this policy,

19  practice and custom in violation of the Eighth Amendment.

20  3.      This action seeks to end the barbaric conditions at San Francisco County Jail 4.  These

21  practices result in, among other injuries, intestinal and lung illnesses, severe skin rashes, traumatic

22  injuries resulting from slipping in raw sewage, and psychological trauma and lasting psychological

23  damage.

24  4.      The practices complained of herein are cruel and inhumane and violate the  most minimal

25  standards of decency of a civilized society.

26  5.      Plaintiffs bring this action for injunctive relief, and for monetary damages, individually and

27  on behalf of all others similarly situated who have been and will be incarcerated in a San Francisco

28

County Jail, and to redress all Defendants' violations of their rights under the Eighth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION

6.     This action is brought pursuant to the Eighth and Fourteenth Amendments to the United State Constitution, by way of the Civil Rights Acts, 42 U.S.C. §§1981, 1983 et seq., and § 1988.

7.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 (claims arising under the United States Constitution) and §1343 (claims brought to address deprivations, under color of state authority, of rights privileges, and immunities secured by the United States Constitution), and, by pendent jurisdiction, Secs. 52.1, and 50, of the California Civil Code and the aforementioned statutory and constitutional provisions.

8.     Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

9.     Plaintiffs individually and as a group filed numerous government claims with the CITY AND COUNTY OF SAN FRANCISCO regarding their claims and the claims.  The group claim was filed on July 30, 2018 and rejected on August  2, 2018.

## VENUE AND INTRADISTRICT ASSIGNMENT

10.     The claims alleged herein arose in the County of San Francisco, State of California. Therefore, venue and assignment, under 28 U.S.C. § 1391(b), lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

## JURY DEMAND

11.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

**PLAINTIFFS**

12.     Plaintiffs are all former and current prisoners incarcerated at San Francisco County Jail 4. All Plaintiffs seek to represent a class of prisoners imprisoned at the San Francisco County Jail 4 at any time since January 4, 2017.

13.     Plaintiffs CANDIDO ZAYAS, RUBEN SOTO, JOSE POOT, MILTON LECLAIRE, MATTHEW BRUGMAN, ALFREDO RUIZ, NIGEL HENRY, are all either currently for formerly incarcerated prisoners in San Francisco County Jail.

**DEFENDANTS**

**San Francisco County Defendants**

14.     Defendant SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT ("SFCSD") and defendant CITY AND COUNTY OF SAN FRANCISCO are each a "public entity" within the definition of Cal. Govt. Code § 811.2.

15.     Defendant VICKI HENNESSEY is, and at all times relevant to this Complaint was, the Sheriff of San Francisco County.  Defendant MATHEW FREEMAN is, and at all times relevant to this Complaint was, the Under Sheriff of San Francisco County.  Defendants HENNESSEY and FREEMAN at times relevant to this Complaint held command and policy making positions with regard to San Francisco County Jails, including San Francisco County Jail 4 and County Jail 5, have caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at County Jail 4 and County Jail 5,  as described fully below.  Sheriff HENNESSEY  and Under Sheriff FREEMAN has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Defendants Sheriff HENNESSEY  and Under Sheriff FREEMAN are sued in their official capacity only.

16.     Defendant Sheriff PAUL MIYAMOTO was and is at all times relevant to this Complaint, the Chief Deputy Sheriff and been the individual ion charge of the Custody Division.  The Custody Division is charged with the operation of the San Francisco County Jails.  As Chief Deputy Sheriff

in charge of the Custody Division, Defendant MIYAMOTO has at all times relevant to this Complaint held a command and policy making position with regard to San Francisco County Jails. Defendant Chief Deputy PAUL MIYAMOTO has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at San Francisco County Jails 4 described fully below. Chief Deputy PAUL MIYAMOTO has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Chief Deputy PAUL MIYAMOTO is sued in his official capacity only.

17.     Defendant JASON JACKSON is, and at all times relevant to this Complaint was, the Captain in charge of San Francisco County Jail 4. At all times relevant to this Complaint, Defendant JACKSON was an employee of the Sheriff who held supervisory, command and/or policy-making positions, and who participated in the supervision and execution of the conduct complained of herein. Defendant JASON JACKSON is sued in his official capacity only.

18.     Defendants SARGEANT DOLLY is and at all times relevant to this Complaint, was an officer on duty at San Francisco County Jail 4 with direct control over plaintiffs and class members. Defendant Dolly is sued in his official capacity only.

19.     Each and every Defendant named herein was at all times relevant to this Complaint an officer or employee of the San Francisco County Sheriff's Office, acting under the color of law within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of ASCO and within the scope of their employment with ASCO.

## CLASS ALLEGATIONS

20.     Pursuant to Rules 23(a), (b2) and (b)(3) of the Federal Rules of Civil Procedure, the named Plaintiffs seek to represent a Plaintiff class consisting of all inmates incarcerated at San Francisco County Jail 4 ("SFCJ4") from January 4, 2017 to the present. All such inmates were forced to eat, sleep and live in pools of raw sewage including human feces and urine, were regularly deprived of fresh drinking water and toilet facilities, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution.

21.    The members of the class are so numerous as to render joinder impracticable.  SFCJ4 has a capacity of over 400 inmate and on information and belief assert that approximately 20,000 inmates are held each year at SFCJ4.

22.    In addition, joinder is impracticable because, upon information and belief, many members of the class are not aware of the fact that their constitutional rights were violated and that they have the right to seek redress in court.  Many members of the class are without the means to retain an attorney to represent them in a civil rights lawsuit.  There is no appropriate avenue for the protection of the class members' constitutional rights other than a class action.

23.    The class members share a number of questions of law and fact in common, including, but not limited to:

a)    whether the members of the class are forced to eat while standing in pools of raw sewage, including human feces and urine;

b)    whether the members of the class are forced to sleep while the cells in which they are housed are flooded with raw sewage, including human feces and urine;

c)    whether the members of the class are forced to live day after day in cells which are flooded with raw sewage, including human feces and urine;

d)    whether the members of the class are regularly denied access to drinking water;

e)    whether the members of the class are regularly denied access to toilet facilities;

f)    whether the members of the class are regularly denied access to sanitary clothing;

g)    whether the members of the class are regularly denied access to sanitary bedding;

h)    whether SFCSD implemented a policy, practice and custom of allowing cells in which class members are housed to be flooded with raw sewage, including human feces and urine;

i)    whether the members of the class were prevented from engaging in the right to file grievances against unlawful practices at SFCJ4.

24.    The Plaintiffs' claims are typical of those of the class.  Like the other members of the class, the Plaintiffs were victims of the Defendants' policy, practice, and/or custom of allowing cells in which SFCJ4 inmates are housed to be regularly flooded with raw sewage, including human feces

and urine, of denial of drinking water and toilet facilities, and denial of sanitary clothing and bedding.

25.     The legal theories under which the Plaintiffs seek relief are the same or similar to those on which all members of the class will rely, and the harms suffered by the Plaintiffs are typical of the harms suffered by the class members.

26.     The Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interests with members of the class, and will fairly and adequately protect the interests of the class.  The Plaintiffs have all been subject to conditions of confinement that violate the Eighth and Fourteenth Amendments of the U.S. Constitution.

27.     The Plaintiffs are represented by experienced civil rights and class action counsel. Plaintiffs' Counsel have the resources, expertise, and experience to prosecute this action.  Plaintiffs' Counsel know of no conflicts among members of the class or between the attorneys and members of the class.

28.     The Plaintiff class should be certified pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure because the Defendants have acted on grounds generally applicable to class members, the interests of the Plaintiffs and potential class members are aligned, and a class action is superior to other available methods for fairly and efficiently adjudicating the case.

## STATEMENT OF FACTS

### Conditions For Inmates At SFCJ4

29.     Since January 4, 2017, the inmates of San Francisco County Jail 4 have been required to endure regular, frequent, and ongoing sewer overflows.  These backups  frequently cause sewage, feces, urine and other bio-hazardous materials to violently gush and spray out from the toilets into the cells.  At other times, the backup is less violent and the sewage overflows from the toilets into the cells.

30.     A Block consists of six cells, commonly called "tanks."  The cells are numbered A1 through A6.  Inmates held in A Block are confined to the tanks 24 hours a day, seven days a week, except for showers, which are allowed only infrequently, two to three times a week, and three hours of recreation or exercise time per week.

31.    Cell A1 is a one person tank.  Cells A2 through A6 six-person, one-room tanks.  Each six-person tank has three bunk beds, a stainless steel sink and a toilet.  Inmates assigned to sleep in the lower bunks on A Block have to store personal belongings on the floor.

32.    Inmates assigned to sleep in the lower bunks on A Block have to sleep right next to the toilet.

33.    B Block has a sewage system linked with A Block.  B Block consists of six cells called "tanks".    B Block also consists of six tanks.  B Block tanks are 12-person tanks.  B Block tanks have two areas, a night area in which six bunk beds are placed, and a day area which contains a table, some fixed stools, and a shower.  Prisoners are kept in the B tanks 24 hours a day, 7 days a week, except for three hours of recreation per week.

34.    Both the day area and night area have a toilet.  The toilets in both area frequently overflow, causing sewage to spray into the cell.

35.    The day space and night space are divided by metal bars, and at night the men are locked in the night area.  The space between the six bunk beds in the night area of each tank on B Block is very tight.  There is one aisle between two rows of three bunk beds each, with no other floor space in the tank.  The toilet in the night areas is located in this aisle, immediately adjacent to inmates' beds.

### Sewage Overflows

36.    Sewage overflows into the cells are chronic and frequent in A block and B block.   When a sewage overflow occurs at SFCJ4, it affects every inmate on the housing block in which it occurs.  Each time there is a sewage overflow, inmates are without fresh drinking water and access to toilets.  Each time there is a sewage overflow, the stink of raw sewage permeates the entire jail.  Normally, raw sewage seeps from one Tank to the next under the walls.  Walls and floors are saturated with sewage, and the accompanying bacteria, fungus, virus, other micro-organisms, and chemicals in sewage.

37.    Mainline, as well as C and D Blocks, also experience sewage overflows.

38.    Tank A1 floods more frequently than any other tank.

39.     Due to the configuration of the plumbing at SFCJ4, when there is a sewage overflow, Tanks B1 and B2 flood at the same time.  Likewise, Tanks B3, B4 and B5 also flood at the same time.

40.     A sewer line runs through the walls behind the cells on both A Block and B Block.  At times sewage erupts from the entire line in the walls and seeps into and through the walls, into all the cells A Block and B Block.

41.     There is a sewer line under the wall of Tank B3.  When that lines overflows, sewage seeps under the wall into the adjoining tanks.

42.     The night toilet of Tank B3 overflows more frequently than the day toilet.

43.     Even when a sewage overflow takes place in one tank, inmates in all of the tanks suffer from the stink of the feces and urine overflow.  At times, SFCSD staff close the windows, preventing any ventilation, increasing the humidity, and worsening the already-unbearable stink.

44.     For long periods of time, although sewage which has overflowed into the tanks is removed by the inmates, sewage inside the walls is not cleaned, but is instead left and allowed by Defendants to accumulate and fester.  Even when the floor is wiped dry, the walls themselves stay damp with sewage which has soaked them from the inside.

45.     Due to the chronic humidity and water and sewage left inside the walls at SFCJ4, mosquitos are breeding inside the jail.

46.     Overflows are frequently rapid and violent, with the sewage exploding out of the toilets in a geyser.  There is no forewarning.  If an inmate is sitting on a toilet, he will have raw sewage, feces and other biohazards spraying on his genitals, rear, thighs and legs, contaminating his pants and clothes.

47.     Deputies are stationed in such a way that they cannot see that a sewage overflowing from their stations when it occurs.  Deputies are stationed in such a way that they cannot respond to a sewage overflow before substantial quantities of raw sewage have already inundated the tanks.

48.     Deputies are stationed outside the hallway that runs in front of the cells, behind locked gates.  Consequently, when a sewage overflow begins, prisoners have to yell "water, water, shut it off!" so that the Deputies can hear.  If the Deputy on duty is farther away than the station in the hallway, or if the sewage starts to come into the cells at night, the response time is slower.

49.     Once a Deputy is aware of the overflow, and once the Deputy decides to do something about it, the Deputy has to unlock a closet and shut off all water to the tanks in order to stop raw sewage from further inundating the tanks.

50.     Frequently the Deputies do not hear these yelled alarms and pleas for help.  In those frequent instances, the raw sewage continues to flood the inmates' living spaces.

51.     When Deputies do hear these yelled alarms and pleas for help, the water is shut off, and inmates have no means to wash their hands, or clean the tanks of sewage.

52.     When Deputies do hear these yelled alarms and pleas for help and shut the water off, inmates have no access to drinking water and no means to relieve themselves.

53.     Prisoners in A block often who are sprayed by feces and urine during sewer overflows are generally not provided access to a shower and must wait long periods of time for a clean change of clothes.

54.     The San Francisco Sheriff's Department and the Sheriff, Defendant Hennessey have conceded that the sewage overflows and resulting inundation of inmate living areas with human feces, urine and other biohazardous waste is caused by a structural plumbing issue at 850 Bryant Street, the building that houses SFCJ4.

## EFFECTS ON INMATES OF
## CHRONIC EXPOSURE TO RAW SEWAGE

55.     Prisoners at SFCJ4 suffer from a number of illnesses as a result of constant exposure to raw, untreated sewage and constant exposure to the bacteria, viruses, parasites and other microorganisms and biohazardous substances present in raw sewage.  These illnesses include, but are not limited to, chronic intestinal diarrhea, vomiting, nausea, skin rashes, hives, headaches, rashes, inflammation, headaches, infections and inflammation around finger and toe nails, respiratory problems including chronic lung and sinus infections and congestion, difficulty breathing, coughs.  Inmates have also developed urinary tract infections and other urinary tract problems from being repeatedly forced to hold their urine due to the unavailability of toilets when the water is shut off for long periods of time.

56.    Muslim inmates who pray have developed rashes on their hands, elbows and forehead from kneeling on the floor after it has supposedly been cleaned and disinfected.  Many inmates have developed scarring due to these rashes.

Slip and Fall Injuries In Raw Sewage Are Common

57.    Many inmates at SFCJ4 have slipped and fallen, due to the unexpected, sudden nature of the sewer overflows and the slippery nature of liquid sewage with human feces in it.  Most have suffered injuries, including hitting their head on the concrete floor or walls.

58.    As an example, Plaintiff Roger Dominguez was on the telephone, which is next to the toilet in his Tank.  An explosive sewer overflow suddenly erupted from the toilet.   Mr. Dominguez attempted to quickly get out of the way of the rapidly overflow of sewage with feces in it, slipped and hit his head on the floor violently.  His head was coated in raw sewage and feces.  Mr. Dominguez vomited, saw stars for twenty minutes, and had headaches as a result for three weeks. Mr. Dominguez was denied a shower for over five hours, and as a result developed a rash on his rear and genital area.  Mr. Dominguez received no medical treatment for his head trauma or the rash.

59.    Plaintiff Milton LeClaire fell badly in raw sewage, damaging his knees.  The Jail has refused to even allow him to use a cane.  As a result, Mr. LeClaire has been unable to even take advantage of the three hours of gym time permitted per week.  The tanks do not have disability bars, and there are no bars in the shower.  Mr. LeClaire requested a chair in order to be able to safely shower, but a chair is not always provided.

Health Problems Are Common

60.    When the sewage overflows, organic compounds, malodorous chemicals, bacteria and viruses and other microorganisms spread throughout the jail through transportation through the air, materials tracked throughout the jail on the shoes of inmates and jail workers, through dispersal on laundry as blankets and bedding are used to sop up the raw sewage and these materials are then washed in tandem with the laundry for all prisoners.  As a result skin rashes and respiratory illness as well as infections are common.

Trauma and Psychological Distress Are Endemic

61.    These chronic but unpredictable sewer overflows are causing trauma and psychological distress among inmates, who exist in a battlefield-like stress environment where they must be on constant alert.  This is particularly difficult because sewage overflows can and do occur at any time of the day or night.  At night, prisoners are unable to sleep soundly out of fear that the toilet can overflow.  Consequently, inmates have to be on guard, while they sleep, to listen for the sound of water overflowing out of the toilet.

62.    Prisoners are forced and required to eat their meals inside the tanks.  As a result of being forced to eat under such circumstances, many prisoners have developed stress-related symptoms.

63.    When a sewage spill occurs at or around the time that meals are scheduled to be distributed, inmates are required to walk across the floor, through raw sewage, to get their food.   A Block tanks do not have tables and chairs.  A Block inmates therefore have to stand, frequently in raw sewage up to and above their ankles, to eat.  Many inmates cannot hold down their food under such circumstances.  Those inmates vomit, adding to the intolerable and toxic conditions in the tanks.

Loss and Damage to Personal Property

64.    The cells in Jail 4 do not have storage, except for one small slot under each bed.  There is no place to put personal belongings except on the bed or on the floor.  The only place in the A block to sit is on the bunk, and when an inmate is sitting on the bunk, his personal belongings has to be placed on the floor.  As a result, due to the unexpected and sometimes explosive and rapid sewage overflows, inmates personal property, and legal papers are damaged and must be discarded.  Due to the frequent sewage overflows, inmates who wished to represent themselves were unable to do so because they could not protect or keep safe and clean their legal papers.  Inmates who had lawyers but wished to assist their lawyers were frequently unable to assist their lawyers because they had no way to protect or keep safe and clean their legal papers.

SFCSD's Response

65.    Prisoners have regularly filed grievances concerning being forced to literally live, eat and sleep in raw sewage.  In March, 2017, some inmates wrote a group grievance.  In response the acting Facility Commander posted in each Tank in B Block a protocol ("Clean-Up Protocol") for

12

1    clean-up of sewer overflows.  The Clean-Up Protocol mandated the issuance both of hazmat suits

2    and of supplies adequate to ensure that conditions were sanitary after clean-up was complete.

3    66.    Although it issued the Clean-Up Protocol, SFCSD did not comply with it. The Clean-Up

4    Protocol was never followed when sewage overflows occurred at night.

5    67.    After one month, SFCSD abandoned the Clean-Up Protocol completely.

6    68.    When a sewage spill occurs, inmates have been prompted to use the blankets off their beds

7    to immediately try to contain  and soak up the sewage.  Sometime later, inmate workers will come

8    and provide a minimum amount of supplies, including thin latex gloves which frequently break,

9    black plastic bags and sometimes additional blankets.   Clean-up after a sewage overflow is

10    sometimes done by inmate workers but most often by the inmates who are housed in the tank which

11    was flooded.  Inmates housed in B Block do the majority of the cleaning on B Block with only

12    minimal supplies.  Prisoners require but seldom receive extra gloves.  Inmates are provided with

13    blankets or bedding to sop up liquid sewage and feces – the same blankets and bedding which they

14    use for sleeping.  Prisoners are to use their hands to pick up the feces and sewage soaked blankets

15    and place them in the black plastic bags.  After the liquid sewage and feces are removed, inmates

16    are given a plastic bottle with some pink solution and a dirty used mop to "sterilize" the floor.

17    69.    Inmate workers – as opposed to inmates who are housed in the flooded cells - can use a wet-

18    vac to suck up the sewage off the floor.  However, there are only two such wet-vacs and each has a

19    limited capacity.

20    70.    The blankets collected are reused – washed in the same system as all other laundry.  The

21    blankets are returned supposedly "cleaned" with large and significant brown stains.

22    71.    In June, 2018, the Sherriff's Department issued a statement to inmates declaring that

23    "[R]epair improvements have been authorized but not yet implemented.  Repairs should begin

24    shortly."

25    72.    On June 20, 2018, the Sheriff stated that "Plumbing repairs should begin shortly, with repair

26    completion by mid-August."  As of mid-September, no repairs have been made.

27

28

73.    The Sherriff's Department has consistently avoided taking responsibility for safely housing the inmates currently at SFCJ4 by stating that "the delay is beyond the control of the Sheriff's Dept."

74.    Beginning in July 2018, CFJ4 staff issue a standard response to grievances, which reads: "On behalf of the San Francisco Sheriff's Department, I apologize for the ongoing inconveniences regarding this matter.  The Sheriff's Bureau of Building Services and the City and County of San Francisco's Real estate Division are in the process of attempting to resolve this matter."

75.    Some of the inmates have been moved out of Jail 4 into Jail 5.  As a result of the move, the inmates who are now in Jail 5 are now housed in glass boxes, have very limited access to telephones, have severely reduced access to exercise or human interaction and are housed in these glass boxes for up to 23 hours a day.

Sewage Overflows

76.    The following is a partial log of sewage overflows over the last three and one half months:

77.    June 1, 2018: Tank A-3 had a sewer overflow.  It was a rapid eruption contaminating the persons and personal property of prisoners in A-3.

78.    June 4, 2018:  Tank A-3 had a sewer overflow.  It was a rapid eruption contaminating the persons and personal property of prisoners in A-3.

79.    June 5, 2018: Tank A3 had a sewer overflow.

80.    June 6, 2018: Sewer overflowed twice in Tank A3.

81.    June 16, 2018:  Toilets in A Block were overflowing and the water was shut down all day.  All inmates had to hold their bowels and could not wash their hands.  This created great discomfort especially as many of the prisoners were already sick.

82.    June 20, 2018: Raw sewage overflowed at 10:30 a.m. in Tank A3, including blood, feces, paper and urine in what is the only "living space" for six prisoners.  All water was off for five to six hours.  The tank was saturated.  Prisoners were denied access to the toilet and to water for the entire period of time.

83.    June 24, 2018:  Raw sewage overflow in A-3.  Tanks are not sanitized, no bleach is used.  Blankets are used to clean up the sewage.

84.      June 25, 2018:  Another sewage overflow in A-3.  No sanitization.

85.      June 27, 2018:  Raw sewage saturated the floor and living quarters of A3.

86.      June 28, 2018:  Sewage flood of A4.  Prisoners lost personal property and canteen goods. One prisoner was on the toilet and was covered from the waist in raw sewage.

87.      July 1, 2018:  Sewage filled the toilets, making the jail stink of feces and urine. The water was off for most of the day and inmates did not have access to toilets or even drinking water.

88.      July 3, 2018: Water off, although not clear which Tank had a sewage overflow.

89.      July 6, 2018: Two sewage overflows, from 9:30 – 10:30 am, and from 6:40 – 8:30 p.m. Raw sewage with feces and urine was on the floor of A3 for over an hour before it was cleaned up. Prisoners were forced to use their bedding and blankets in an attempt to contain the sewage.

90.      July 9, 2018: Overflow, with a big flood of sewage pouring out all over the floor of A3. Impossible to properly clean, or wash hands.

91.      July 10, 2018:  Sewage overflow spill in A-block from 1:30 p.m. to 2:45 p.m.

92.      July 10, 2018:  Sewage overflow, inmate's commissary goods is contaminated and left unusable and inedible.

93.      July 12, 2018: Sewage spill in A-block.

94.      July 13, 2018: Two sewage spill in A-block 8:50 - 10 am, and at 6 p.m.

95.      July 14, 2018: A Block sewage overflow 8:50 pm – 10 pm.

96.      July 15, 2018: A Block sewage overflow and all water was off 12 noon – 5 p.m.  A second sewage spill occurred at 1 a.m.  The deputies were short tempered and roughed up an inmate for requesting to be taken out of his tank to use the bathroom.

97.      July 19, 2018 – Sewage overflow in A3.

98.      July 24, 2018 – Sewage overflow in A3  9:15 pm-11:30 pm.  Sewage flood in A-4.  Water so high feces were floating in the cell.  Prisoners could not breathe because of foul odor.  Many lost shoes, which were damaged and contaminated.

99.      July 25, 2018  Sewage filled A block, really foul smell, lasting from 8am – 11:45 am.  No water, bathroom access.

100.    July 27, 2018: Sewage overflow in A-4.  Inmate Candido Zayas was on the toilet when it occurred, and was covered on his genitals, thighs and pants with sewage and feces.  He slipped and fell while getting up, hit his head, and got sewage all over him.

101.    July 29, 2018: Sewage overflow, all A Block water shut off for hours.

102.    July 31, 2018:  Raw sewage saturated the floors of A3 all day.  First overflow and flood at 7:45 am, with a second sewage overflow at 4:20 p.m.

103.    August 1, 2018: Massive sewage overflow at 7:00 pm in A3.

104.    First Week of August, 2018; 5 Sewage overflows in one day 6 pm, 7:45, 8 pm, 10 pm. Sewage overflowed in the wall behind the B and C blocks.  Sewage was more than ankle deep.  The entire "main line", including C and D Blocks, was flooded by sewage.

105.    August 5, 2018: Sewage flood in A1.  The flooding began around 3:45am, response time was slow, problem not fixed until after 7 am.

106.    August 6, 2018: Raw sewage in A block, covering the floor with feces, blood, toilet paper, urine.  Feces and urine flooded the floor in A-1, A-2 and A-3.  Prisoners were forced to clean it up themselves by putting their blankets on to stop the water from spreading. Candido Zayas was only provided with one pair of gloves, no face mask, and no bleach.

107.    August 7, 2018:  Sewage overflow with feces in A-3.

108.    August 8, 2018:  Hot day – all water, including toilets and drinking water, is off for a long period of time.

109.    August 9, 2018: Sewage overflow in A1 and A3 at about 3:30 p.m.

110.    August 10, 2018:  Sewage overflow in A-3.  After turning off the water, Deputies for over an hour ignored the prisoners' repeated requests before finally providing tools and minimal supplies to clean up the sewage.  Raw sewage, water and feces on the floor.

111.    August 13, 2018:  Deputies delay over five minutes to turn off water after sewage starts overflowing, resulting in a significant amount of feces, urine and used toilet paper on the floor for a long period of time.

112.    August 15, 2018: Two sewage overflows.  First around 3 a.m. in A block, all the water and sewage was shut off.  No one on A block could use the toilet, or have access to drinking water for

approximately four hours.  The floor deputy was requested multiple times to provide water and access to a toilet, and refused to do so.  Second sewage overflow in A Block about 11:00am, water was off again from 11 a.m. to 1 p.m.

113.    August 16, 2018: Sewage overflow in A block.  Water was off from 8:30 p.m. to 2:30 a.m. Staff denied requests to be taken out of tanks to use a toilet.

114.    August 17, 2018:  Sewage overflow from 11:00 am – 12:30 p.m.  No water or toilet access during this time.

115.    August 19, 2019: Sewage overflow in Tank A2 at  8 a.m.  Feces and urine on the floor. Staff gave blankets to sop up the water and feces, and a pink solution to clean.  A dirty mop, which appears to be the same mop used for all sewage spills, was provided.  The mop did not appear to have been cleaned or disinfected since its last use.  A second sewage spill between 6 p.m. and 7 p.m.

116.    August 20, 2018:  Sewage overflow in A block from 9 p.m. to 12 a.m.  The sewage flood reached almost 4 inches.

117.    August 21, 2018  Water off from 5 p.m. to 6 p.m.

118.    August 22, 2018: Sewage overflow in A4.  Blankets and bedding materials used to soak up urine and feces.

119.    August 23, 2018: Water off for an hour 10:00 – 11:00.

120.    August 24, 2018: Sewage overflow in Tank A1.    Water off for over 3 hours starting at 7:45, inmates had no access to the bathroom for over that time.

121.    August 25, 2018: Tank A3 water off in the morning, sewage overflow in Tank A4 in the evening with feces on the floor.  No access to the toilet or water during this period of time. Blankets and bedding materials used to soak up urine and feces.

122.    August 26, 2018: Sewage overflow in Tank A4.  Water off from 7:30 - 9:30 am.  Blankets used to sop up the water and feces, and a pink solution to clean.  The same dirty mop used for all sewage spills, and which had not been cleaned or disinfected, was provided.  A second spill occurred from 1:45 to 3:30 p.m.

123.    August 27, 2018: Sewage overflow in A block for four hours.  No drinking water or toilets available.

124.    August 28, 2018:  Sewage overflow in A3 – lunch was served at the same time.  Prisoners unable to eat, nauseous.

125.    August 29, 2018: Sewage overflow in both A Block and B Block.

Applicable Community Standards

126.    SFCJ4's treatment of prisoners falls far short of acceptable conditions under the United States Constitution. The Eighth Amendment to the U.S. Constitution requires that correctional facilities "must ensure that inmates receive adequate . . . shelter . . . . ."  Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009) quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)

127.    California Gov't Code § 835(a) provides that "a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred" and a "negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition . . . ."

128.    California Health & Safety Code § 101045 contemplates that "the sanitation requirements required . . . for restaurants . . . ." shall be maintained in "all local jails and detention facilities".

129.    The California Code of Regulations, Title 15, § 1280, mandates that SFCSD "shall" develop and adopt "procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility" and "correct unsanitary or unsafe conditions" at SFCJ4.

# FIRST CLAIM FOR RELIEF

## DEPRIVATION OF FEDERAL CIVIL RIGHTS

### UNDER 42 U.S.C. § 1983 AGAINST SFCSD

130.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

131.    At all relevant times herein, SFCSD has been responsible for operating the San Francisco County Jail 4.

132.    At all relevant times herein, Defendant SFCSD has established and/or followed policies, procedures, customs, and or practices, and those policies were the cause of violation of the Plaintiffs' and the class members' constitutional rights granted pursuant to 42 U.S.C. § 1983, including those under the Eighth and Fourteenth Amendments.

133.    At all relevant times herein, SFCSD has followed a custom, policy and practice of allowing prisoner cells in SFCJ4 to be flooded on a regular and sometimes daily basis with raw sewage including but not limited to human feces, urine and blood.

134.    At all relevant times herein, SFCSD has followed a custom, policy and practice of causing inmates to be housed in cells that are flooded with raw sewage including but not limited to human feces, urine and blood.

135.    At all relevant times herein, SFCSD has followed a custom, policy and practice of causing inmates to sleep in cells that are flooded with raw sewage including but not limited to human feces, urine and blood.

136.    At all relevant times herein, SFCSD has followed a custom, policy and practice of causing inmates to eat in cells that are flooded with raw sewage including but not limited to human feces, urine and blood.

137.    At all relevant times herein SFCSD has followed a custom, policy and practice of causing inmates to clean cells that are flooded with raw sewage including but not limited to human feces, urine and blood without proper training or supervision on handling toxins, or biohazardous wastes.

138.    At all relevant times herein SFCSD has followed a custom, policy and practice of causing inmates to clean cells that are flooded with raw sewage including but not limited to human feces, urine and blood without adequate or necessary equipment or gear or adequate or necessary protective clothing or equipment.

139.    At all relevant times herein, SFCSD has followed a custom, policy and practice of causing inmates to clean cells that are flooded with raw sewage including but not limited to human feces, urine and blood with their own bedding.

140.    At all relevant times herein, SFCSD has followed a custom, policy and practice of causing inmates' bedding contaminated with raw sewage raw sewage including but not limited to human

feces, urine and blood to be comingled and laundered with all the regular laundry at the jail and returned to use by inmates without proper or necessary cleaning and sanitation.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

141.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

142.    At all relevant times herein, SFCSD had a legal duty to provide maintain housing with sewage facilities sufficient to allow inmates to live, eat, and sleep in sanitary conditions.

143.    At all relevant times herein, SFCSD had a legal duty to maintain facilities at SFCJ4 sufficient to allow inmates to live, eat, and sleep in areas not inundated with raw sewage including human feces, urine and blood.

144.    At all relevant times herein, the SFCSD failed to exercise the ordinary care or skill in the management of the property at 850 Bryant Street which is required to maintain facilities sufficient to prevent the regular and sometimes daily flooding of portions of 850 Bryant Street with raw sewage including human feces, urine and blood.

145.    At all relevant times herein, SFCSD's failure to exercise such ordinary care or skill in the management of the property at 850 Bryant Street resulted and was the proximate cause of the regular and sometimes daily flooding of the living quarters of inmates at SFCJ4 with raw sewage including human feces, urine and blood.

146.    At all relevant times herein, named Plaintiffs and class members herein have been injured by the regular and sometimes daily flooding of the living quarters of inmates at SFCJ4 with raw sewage including human feces, urine and blood that was and continues to be caused by SFCSD's failure to exercise the ordinary care or skill in the management of the property at 850 Bryant Street.

147.    At all relevant times herein, named Plaintiffs' and class members' injuries proximately caused by SFCSD's failure to exercise ordinary care or skill in the management of the property at 850 Bryant Street include, but are not limited to, chronic intestinal diarrhea, vomiting, nausea, skin rashes, hives, headaches, rashes, inflammation, headaches, infections and inflammation around

finger and toe nails, respiratory problems including chronic lung and sinus infections and congestion, difficulty breathing, coughs, and urinary tract infections, and damage and loss of personal property and legal documentation.

## THIRD CLAIM FOR RELIEF

## NEGLIGENCE PER SE

148.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

149.    By regulation, CCR Title 15, § 1280, SFCSD is required to develop, adopt and maintain "procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility" and "correct unsanitary or unsafe conditions" at SFCJ4.

150.    At all relevant times herein, SFCSD violated CCR Title 15, § 1280 by failing to develop, adopt and maintain "procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility" and by failing to "correct unsanitary or unsafe conditions" at SFCJ4.

151.    At all relevant times herein, SFCSD's violation of CCR Title 15, § 1280 and its failure to develop, adopt and maintain "procedures for the maintenance of an acceptable level of cleanliness, repair and safety throughout the facility" and to "correct unsanitary or unsafe conditions" at SFCJ4 was the proximate cause of regular and sometimes daily flooding of the living quarters of inmates at SFCJ4 with raw sewage including human feces, urine and blood and of illnesses and injuries suffered by inmates as a result of continual and prolonged exposure to raw sewage.

152.    Flooding of the living quarters of inmates at SFCJ4 with raw sewage including human feces, urine and blood and of illnesses, and the injuries suffered by inmates injury as a result of continual and prolonged exposure to raw sewage, are occurrence of the nature which CCR Title 15, § 1280 was designed to prevent.

153.    Plaintiffs and class members, all inmates or former inmates at SFCJ4, are of the class persons for whose protection CCR Title 15, § 1280 was adopted.

**COMPLAINT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.,* United States District Court, Northern District of California, Case No._____

1

2

**FOURTH CLAIM FOR RELIEF**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

3

4

154.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

5

6

7

8

9

10

155.    SFCSD conduct in adopting a policy, custom and practice of housing inmates in living quarters in which they are forced to live, eat and sleep in the constant fear of toilets unpredictably gushing and spewing raw sewage including human feces, urine and blood and of illnesses, of such raw sewage seeping out of walls into the cells in which they are kept 24 hours a day, is extreme and outrageous conduct that intentionally or recklessly disregards the probability of causing emotional distress.

11

12

13

14

15

156.    SFCSD's policy, custom and practice of housing inmates 24 hours a day in living quarters in which they are forced to live, eat and sleep with the constant threat of chronic and unpredictable sewer overflows and exposure to raw sewage including human feces, urine and blood is the proximate cause of Plaintiffs' and class members' severe and extreme emotional trauma and distress.

16

17

18

19

157.    SFCSD's policy, custom and practice of housing inmates 24 hours a day in living quarters in which they are forced to live, eat and sleep with the constant threat of chronic and unpredictable sewer overflows and exposure to raw sewage including human feces, urine and blood exceeds all bounds of conduct that is usually tolerated in a civilized community.

20

**PRAYER FOR RELIEF**

21

**WHEREFORE,** Plaintiffs respectfully request the Court to:

22

23

1.    Certify the Class of inmates at SFCJ4 under F.R.C.P. Rule 23, and permit the named plaintiffs and their counsel to represent the Class and to proceed accordingly.

24

25

26

2.    Make findings of fact regarding the (i) failure of SFCSD to maintain an acceptable level of cleanliness, repair and safety throughout SFCJ4 and (ii) failure to correct unsanitary or unsafe conditions at SFCJ4.

27

28

**COMPLAINT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.,* United States District Court, Northern District of California, Case No._____

**A. Prohibit defendants from:**

a.      housing inmates in any San Francisco County Jail Cell which is exposed to  raw sewage including but not limited to human feces, urine and blood;

b.      causing inmates to eat in cells that are exposed to raw sewage including but not limited to human feces, urine and blood;

c.      causing inmates to sleep in cells that are exposed to with raw sewage including but not limited to human feces, urine and blood;

d.      causing inmates to clean cells that are flooded with or exposed to raw sewage including but not limited to human feces, urine and blood with their own bedding; and,

e.      having inmate workers or staff workers clean cells that are flooded with or exposed to raw sewage including but not limited to human feces, urine and blood, absent proper training and supervision in handling biohazards and human waste, and the appropriate and necessary protective clothing and gear.

**B. Affirmatively Order and direct defendants to:**

a.      Fully comply with all applicable state statutes and regulations, specifically those requiring the SFCSD to maintain an acceptable level of cleanliness, repair and safety throughout the facility SFCJ4 and to correct unsanitary or unsafe conditions, and,

b.      Thoroughly sanitize and disinfect all areas of Jail 4 and any other Jail facility that has been exposed to sewage including but not limited to human feces, urine and blood; and,

c.      Not penalize any plaintiff or potential class member who complained or filed grievances against the complained of the sewage spills or resulting conditions, or requested medical assistance for any consequence due to the sewage spills;

c.      Provide, at no charge, to any plaintiff or potential class member, a thorough physical including blood tests to evaluate any health issues that may exist from the exposure to sewage, or injuries received as a result of the sewage spills.

**And,**

**C. Award to Plaintiffs and class members**

a.      compensatory and punitive damages to individual plaintiffs against defendants in amounts

to be determined at trial;

b.      costs and fees for this action, including attorneys' fees; and

c.      grant such other and further relief as this Court deems appropriate.


DATED: October 4, 2018                    LAW OFFICE OF YOLANDA HUANG


                                           ___/s/ Yolanda Huang_____
                                           Yolanda Huang
                                           Counsel for Plaintiffs

**COMPLAINT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.,* United States District Court, Northern District of California, Case No._____