LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
528 Grand Avenue
Oakland, CA 94610
Telephone: (510) 329-2140
Facsimile:  (510) 580-9410
E-Mail: yhuang.law@gmail.com

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| CANDIDO ZAYAS, RUBEN SOTO, ALFREDO RUIZ, JOSE POOT, MILTON LECLAIRE, NIGEL HENRY, RALPH DOMINGUEZ, MATTHEW BRUGMAN, MICHAEL BROWN, KISHAWN NORBERT, MARK EDWARD HILL, and JAMES CLARK on behalf of themselves individually and others similarly situated, as a class and Subclass,<br><br>*Plaintiffs*,<br><br>vs.<br><br>SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSEY; UNDER SHERIFF MATHEW FREEAN; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON, SARGEANT DOLLY and John & Jane DOEs, Nos. 1 - 50.<br><br>*Defendants*. | CASE NO.: 3:18 -CV-06155 – ZAYAS<br><br>Related Case No.  3:18-cv-04890-JCS (Johnson)<br>                          3:18-cv-04857 JCS (Taylor)<br><br>**JOINT NOTICE AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:     May 29, 2020<br>Time:                   9:30 a.m.<br>Place:                  Courtroom G, 15th Floor<br>                            450 Golden Gate Avenue<br>                            San Francisco, CA 94102<br><br>Trial Date:          Not set. |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.,* United States District Court, Northern District of California, Case No.3:18-cv-06155

# TABLE OF CONTENTS

I.    INTRODUCTION: THE PROPOSED SETTLEMENT ...............................................1

II.    PLAINTIFFS' CLAIMS AND LITIGATION SUMMARY.......................................2

    A.  PLAINTIFFS' COUNSEL'S ASSESSMENT OF THE DATA ...........................3

    B.  DEFENDANTS' POSITION..................................................................................4

    C.  SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT .........................5

III.    DEFINITIONS..........................................................................................................6

IV.    SETTLEMENT..........................................................................................................8

    A.  MONETARY SETTLEMENT ...............................................................................8

    B.  NOTIFICATION TO CLASS MEMBERS..........................................................10

    C.  CLASS CLAIMS PROCESS AND ADMINISTRATION ...................................10

    D.  REQUESTS FOR EXCLUSION ..........................................................................10

    E.  OBJECTIONS TO THE SETTLEMENT .............................................................11

    F.  DUTIES OF THE NOTICE AND CLAIMS ADMINISTRATOR .......................12

    G.  FINAL APPROVAL ............................................................................................13

    H.  CAFA COMPLIANCE .........................................................................................13

V.    POINTS AND AUTHORITIES IN SUPPORT........................................................13

    A.  LEGAL STANDARD FOR APPROVAL ...........................................................13

    B.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ..................14

      1.  The Settlement is the Produce of Good Faith, Informed, and Arm's-Length Negotiations. .14

      2.  The Settlement Provides Significant Benefits to Class Members....................................14

        a) The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation. ...................................................................................................15

        b) Class Members Are Served By a Straightforward Claims Process...................................15

      3.  The Proposed Settlement Treats All Class Members Equitably Relative to One Another ....16

    C.  THE COURT WILL BE ABLE TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES UPON FINAL APPROVAL. ............................................................16

      1.  The Zayas Plaintiffs Have Met The Requirements of Rule 23(a). ......................................17

        a) The Size of the Class Satisfies the Numerosity Requirement ...........................................17

        b) Commonality Requirement of Rule 23(a)(2) Is Met .........................................................18

          (1)     Commonality is Demonstrated by Challenge to a Systemwide Condition. .............18

(a) Challenges by Inmates to Conditions of Confinement Qualify for Class Treatment. 19

(b) The Claims of the Class Representatives Are Typical of the Claims of the Class and Subclass. ..................................................................................................20

(c) The Proposed Class Representatives and Class Counsel Will Fairly and Adequately Protect the Interests of the Class and Subclass. ......................................................21

2. Plaintiffs Met the Requirements of Rule 23(b)(3). ............................................22

a) Common Questions of Law and Fact Predominate..................................23

3. Alternatively, Rule 23(b)(1)'s Requirements Are Met ..........................................24

a) Class Treatment Is The Superior Methods for the Resolution of This Case. ..................24

D.   THE PROPOSED SETTLEMENT MERITS APPROVAL UNDER THIS DISTRICT'S PROCEDURAL GUIDANCE. ...............................................................................26

1.   The Settlement Class Is a Clearer Defined Class than The Litigation Class. .......................26

2.   The Claims To be Released ............................................................................26

3.   The Settlement Recovery is A Fair Settlement Compared to The Recovery Available If Plaintiffs Had Prevailed on Each of Their Claims. ........................................................26

4.   The Proposed Allocation Plan For The Settlement Fund.....................................26

5.   A Substantial Number of Class Members Are Incentivized and Expected to Participate. ....27

6.   There Is No Reversion In This Case ....................................................................27

7.   Settlement Administration................................................................................27

8.   The Attorneys' Fees Are Fair, Reasonable and Adequate. ...................................28

a) Percentage of the Fund Method of Calculating Fees ..............................28

(1)     Lodestar standards. ..............................................................29

9.   Incentive Awards............................................................................................30

10. Notice of Compliance with CAFA .....................................................................30

11. Information About Past Distributions in Comparable Class Settlements. ...........................30

E.   THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE. ..............................................................................................................31

F.   THE PROPOSED FINAL APPROVAL HEARING SCHEDULE........................................32

VI.    CONCLUSION..................................................................................................32

# TABLE OF AUTHORITIES

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................16, 17, 23

*Angell et al v. City of Oakland, County of Alameda, et al.*, C13-0190 NC, N.D. Cal. 2015 ...............30

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ....................................................18, 19, 21

*Baby Neal v. Casey*, 43 F.3d 48 (3rd Cir. 1994) ...........................................................21

*Bluetooth Headset Products Liab. Litig.* 654 F.3d 935 (9th Cir. 2011) .........................................28, 29

*Blum v. Stenson*, 465 U.S. 886 (1984) ......................................................................29

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171 (9th Cir. 1990) ....................21

*Californians for Disability Rights, Inc., v. Cal. Dep't of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008)..17

*Camden I Condominium Association v. Dunkle,* 946 F.2d 768 (11th Cir. 1991) ................................28

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...........................................24

*Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003) .....................................................19, 24

*Churchill Vill., L.L.C. v. GE,* 361 F.3d 566 (9th Cir. 2004) ..............................................31

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ........................................................29

*Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 1461944 (N.D. Cal. Apr. 14, 2016)..............................................................................................22

*Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992)..............................29

*Dionn Taylor v. San Francisco County Jail, et al.*, No. 18-cv-04857 ....................................1

*Dornberger v. Metropolitan Life Insurance Company*, 182 F.R.D. 72 (S.D.N.Y. 1998).....................23

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) .........................20, 22

*Gay v. Waiters and Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977) ................................17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .....................................................21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ..............................18, 20, 21, 25

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).............................................20

*Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909 (9th Cir. 1964) ........................17

*Hawkins v. S2Verify, No.* C 15-03502 WHA, 2016 WL 3999458 (N.D. Cal. July 26, 2016).............17

iv

*Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, 851 F.Supp. 2d 1040 (S.D. Tex. 2012) ................................................................................................................................28

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................................................29

*In re Quinus Security Litigation*, 148 F.Supp. 2d 967 (N.D. Cal. 2001) ..................................29

*In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346 (N.D. Cal. 2005)........................17

*Johnson, et al. v. City and County of San Francisco et al.*. No. 3:18-cv-04890-JCS ........................1, 8

*Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. 16 Nov. 28, 2012) ................................................................................................................................15

*Krzesniak v. Cendant Corp.*, No. C05-05156 MEJ, 2007 WL 1795703 (N.D. Cal. June 20, 2007) ....21

*MacNamara v. City of N.Y*, 275 F.R.D. 125 (S.D.N.Y. 2011) ...................................................19

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ................................................31

*Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) ..........................................19

*Nobles v. MBNA Corp.*, , No. C 06-3723 13 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ................................................................................................................................15

*Parsons v. Ryan*, No. CV12-0601-PHX-NVW, ......................................................................17, 20

*Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *5 (N.D. 27 Cal. Sept. 26, 2013) ................................................................................................................................14

*Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) ......................................22

*Rannis v. Recchia*, 380 F. App'x 646 (9th Cir. 2010) .....................................................................17

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-cv-05596- JST, 2015 WL 5569462 (N.D. Cal. Sept. 22, 2015) ..............................................................................22

*Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) .....................................................18, 19, 20

*Rosales v. El Rancho Farms*, No. 1:09-23 CV-00707-AWI, 2015 WL 4460635 (E.D. Cal. July 21, 2015) ................................................................................................................................14

*Rossini v. Olgivy & Mather*, 798 F.2d 590 (2d Cir. 1986) ...............................................................24

*Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721 (5th Cir. 1976).......................................18

*Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ................................................................................................................................25

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...............................................................29

*Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005) ..................................................19, 20, 23, 24

v

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.*, United States District Court, Northern District of California, Case No.3:18-cv-06155

*Trosper v. Styker Corp.*, No. 13- CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) 22, 25

*Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC) 2016 WL 4010049 (N.D. Cal. July 26, 2016) .................................................................16, 25, 26, 27

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .........................................................18

*Washington Mobilization Committee v. Cullinane*, 400 F.Supp. 186 (D.D.C.1975)...........................24

*Wells v. Allstate Insurance Co.*, 210 F.R.D. 1, 12 (D.D.C. 2002) ......................................23

*Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168 (9th Cir. 2010) ...........................20, 21, 25

*Zayas, et al. v. San Francisco County Sheriff's Department*, et al. .................................1, 11

## Federal Statutes

28 U.S.C. § 1715...........................................................................................13, 30

42 U.S.C. § 1997e..........................................................................................15

## Federal Rules

Federal Rule of Civil Procedure 23 ............................................................... passim

## Treatises

Carlos F. Herr, *Annotated Manual for Complex Litigation*  (4th ed. 2004) .........................16

Federal Judicial Center, T. Willging, L. Hooper, & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* (1996)...28

Moore's Federal Practice – Civil (3d ed. 2003).................................................17

Newberg & Conte, *Newberg on Class Actions* § 11.25 (4th ed. 2002) ...................................16, 17, 22

Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (1998) .................................................................28

## Other

N.D. Cal., *Procedural Guidance for Class Action Settlements* (Dec. 5, 2018) ........................... passim

**NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT[1]**

TO ALL THE PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 29, 2020 at 9:30 a.m. or at such other date and time as the Court may set, in Courtroom G, of the United States District Court for the Northern,15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby do move the Court for an order granting preliminary approval of the Class Action Settlement and directing notice to the Class under Federal Rule of Civil Procedure 23(e)(1); appointing Settlement Class Counsel and Class Representatives under Federal Rule of Civil Procedure 23(g)(3); and scheduling a final approval hearing under Federal Rule of Civil Procedure 23(e)(2).

As discussed in the attached Memorandum of Points and Authorities, the Parties have negotiated a settlement that provides substantial compensation to class members for their injuries for the actions and circumstances alleged in the complaint. The proposed notice program, which includes direct mail and e-mail notice, publication, and extensive multimedia outreach, fulfills the requirements of Rule 23 and due process as the best notice practicable under the circumstances. Plaintiffs thus respectfully request that the Court (1) certify the class only for the purposes of settling this Action; (2) grant preliminary approval of the proposed settlement; (3) approve the form and manner of giving notice of the proposed settlement to the Settlement Class and direct that notice be issued; and (4) schedule a final approval hearing 90-120 days after entry of the Preliminary Approval Order**.**

## I.   INTRODUCTION: THE PROPOSED SETTLEMENT

These three cases, *Zayas, et al. v. San Francisco County Sheriff's Department*, *et al.,* No. 18-cv-06155 JCS; *Johnson, et al. v. City and County of San Francisco et al.*, No. 3:18-cv-04890-JCS; and *Dionn Taylor v. San Francisco County Jail, et al.*, No. 18-cv-04857, were all related, having arisen out of the same set of facts, namely sewage overflows which occurred at San Francisco County Jail 4 over an 18-month period from January, 2017 through September, 2018. Zayas was filed by the

---

[1] Defendants join only in Section III of the Motion and do not oppose the remainder of the Motion.

named plaintiffs on behalf of themselves and on behalf of the class, and Johnson and Taylor were filed by the named plaintiffs individually and are not putative class actions.

Pursuant to this settlement, subject to Court approval, the City Conditions defined below, and execution of the Full and Final release by all named Plaintiffs, Defendants will provide a total of $2,100,000 to fully settle all the claims of all three litigations, Zayas, Johnson & Taylor. Based on an agreement among the Plaintiffs' counsel, Zayas class members will receive $1,249,935.00, not subject to reversion. Johnson plaintiffs will receive $844,355, and Dionn Taylor, will receive the remaining amount of $5,710.

The Zayas litigation will be a claims-based settlement, and any remainder appropriate for cy pres will only be after determination that the effort and cost of further distribution outweighs the remainder amount. It is estimated that any *cy pres* award will be minor and the recipient will be Legal Services for Prisoners With Children, a Bay Area not for profit.

## II.      PLAINTIFFS' CLAIMS AND LITIGATION SUMMARY

Plaintiffs allege that for a period of approximately 18-month period, from January 3, 2017 through September 15, 2018, the sewage system at County Jail 4 regularly backed up, causing sewage to overflow in the cells of Housing Block A and B. At times the overflow was so severe that the sewage would flow into the hallway, and into adjacent cells. When the sewage overflowed, the water to the entire Housing Block had to be turned off, and the maintenance staff summoned. During the water main shutoffs, inmates had no water to drink, and could not use the toilet. The clean-up of the sewage overflow was also performed by inmates.

Plaintiffs further allege that many of the inmates suffered from skin rashes, respiratory ailments and stomach illnesses. Inmates also suffered from injuries to knees, backs, heads and arms from slip and falls due to the slippery concrete floors. Because the inmates had no storage and personal property was kept on the floor, personal property, including commissary was regularly ruined.  This ongoing and long-lasting situation created intolerable and unconstitutional conditions of confinement.

Starting in 2017, the inmates regularly filed grievances, but the City failed to make the necessary repairs. All plaintiffs allege that defendants behaved with deliberate indifference, and that

2

the conditions were cruel and unusual punishment, and in violation of state and federal constitutional protections.  The three lawsuits were filed in the summer and early fall of 2018. Plaintiffs requested monetary damages and injunctive relief.

Captain Jackson testified that each sewage overflow is accompanied by a work order because the maintenance staff was called to address each sewage overflow, and all maintenance requests are accompanied by a written work order. Defendant City and County of San Francisco provided, through discovery, a list of all inmates in the affected cell blocks, B, and C, and on the dates and respective cell each inmate occupied, for the affected eighteen-month period, and all written plumbing work orders. Prior to the deposition of the CalOSHA investigator, this case settled on principal.

### A.    PLAINTIFFS' COUNSEL'S ASSESSMENT OF THE DATA

Plaintiffs' counsel, utilizing the two data sets produced by Defendants, was able to determine how many of the inmates who were in County Jail 4 ("CJ4") for the eighteen-month period, were affected by the sewage, either directly with a sewage overflow in the cell they were occupying, or indirectly by suffering the water from the lack of water, to drink or wash; and the inability to use the toilets when the jail waited for maintenance staff to repair the problem.  This data set was then cross-referenced against the grievances filed by any inmate during this period regarding the sewage problem. Plaintiffs' counsel's analysis of the data shows that there were a total 12,409 inmates who occupied a cell within this eighteen-month period of time. There were 396 sewage flooding incidents. Of the 12,409 inmates, a total of 2,592 individuals were affected by the sewage overflows. A total of seventy-three inmates filed grievances regarding the sewage overflows. These seventy-three inmates filed over 700 grievances between them.

There are 213 named *Johnson* plaintiffs. Of these, there are twenty-eight named Johnson plaintiffs for whom the defendant City has no data showing that these named plaintiffs stayed at CJ4 during the relevant time period or were not housed in A, B, C or G2 block during the relevant time period. There are five Johnson plaintiffs for whom the City does not show that these individuals were at J4 during the period of time covered by the lawsuit. Plaintiff's counsel's data analysis shows that a

total of 135 out of the 213 named Johnson plaintiffs were inmates in CJ4 were negatively impacted by sewage. Thirty-three (33) of the Johnson plaintiffs filed grievances.

In the Taylor matter, there is only one named plaintiff, Mr. Dionn Taylor. Mr. Taylor was an inmate in CJ4 during the affected period of time and did file grievances.

In the Zayas litigation, there are 8 named plaintiffs. Deducting the Johnson plaintiffs and Mr. Taylor, the class in Zayas numbers 2,456 individuals, of whom 40 filed grievances.

All plaintiffs have agreed that there are two categories of sewage impact: direct and indirect. The direct impact occurred when an inmate in a cell suffered a direct sewage overflow, as determined by plaintiffs' counsel based upon discovery produced by defendants. A direct impact can result from the subject toilet in that particular overflow, or from a large sewage overflow which migrated into the hallway and adjacent cells. The front bars of all cells do not reach the ground, so sewage and liquids flow easily from one cell to another.

The indirect sewage impact is when the overflow was in an adjacent cell, and the inmates suffered as a result of the water being turned off and were deprived of access to the toilet and drinking water. Those who suffered indirect impact were also subjected to the sewage smells and the continual dampness.

Based upon Plaintiffs' counsel's analysis of the data, 1,808 Class Members had 9,123 direct sewage impacts and 2,091 Class Members had 16,100 indirect sewage impacts.

## B.    DEFENDANTS' POSITION

Defendants deny these allegations and deny liability for each of the claims in the complaints filed in these consolidated actions. The City asserted that during the period of January 2017 to September 2018, as a form of protest, certain inmates regularly misused the jail's toilets causing them to flood.  Although the City took numerous steps to address the plumbing problems that occurred when inmates put improper material, such as chip wrappers, plastic bags filled with spoons, clothing, bedsheets, rags, and other items into the toilets, causing clogs, the City was unable to prevent frequent floods in portions of County Jail 4. When floods occurred, Sheriff's Department staff would shut off the water, call the building plumber, and have any overflow cleaned and disinfected, including through the use of bleach and disinfectant. In an attempt to avoid other extensive floods,

the Department of Public Works installed hook devices in the plumbing designed to catch the improper materials further upstream in the plumbing system. The purpose of these hooks was to limit the backups to only those areas up-stream from the cells in which the inmates flushed improper material, greatly limiting the impact of any blockage in both size and location. The jail also implemented education programs and other procedures to try to prevent these floods. Unfortunately, the inmates' continued flushing of improper items created floods in the A and B block cells, although the vast majority of these floods were limited in size and location. Because these interventions failed to prevent the floods, in September 2018, the City added a "muffin monster" into the plumbing downstream from A and B block, which was able to break apart the larger materials being flushed into the system and resolved the flooding issues.

### C.   SETTLEMENT NEGOTIATIONS AND THE SETTLEMENT

The Settlement is a result of the vigorous representation of Plaintiffs' counsel. Plaintiffs' counsel conducted an extensive review of the relevant facts, including a review of the physical plants' plans, conducted the deposition in this case, plus subpoenaed the lead Cal-Osha investigator. Plaintiff's counsel also thoroughly reviewed and analyzed the data produced by defendants and other parties to determine the number of sewage floods, the cells said sewage floods impacted, and the identity of the inmates in these cells.

Through the exchange of information concerning both damages and the merits of the case, Plaintiffs' counsel, Defendants and counsel for the Johnson plaintiffs engaged in a series of arm's-length negotiations with both private and court neutrals, through which the Parties reached an agreement in principle to settle and release all claims against Defendants in return for a cash payment of $2.1 million for the benefit of the Settlement Class, the Johnson plaintiffs and Dionn Taylor. The parties agreed in principal to a full and final release of the claims in these actions, which is currently pending for review with the City and County of San Francisco Board of Supervisors. (Murphy Decl. 3-4, Ex. A.)

At the specific request of defendant City and County of San Francisco, the following Sections III. Definitions and IV. Settlement are included in this Motion rather than in a separate document.

5

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.,* United States District Court, Northern District of California, Case No.3:18-cv-06155

## III.    DEFINITIONS

1.1    "Effective Date" shall be the date when all conditions described below in paragraph 1.13 have been met and the Judgement has become Final as defined below. In no event, shall the Effective Date be earlier than August 30, 2020.

1.2    "Final Approval" means the date on which the Court has entered the Judgment, following submission of this Settlement and the Final Approval Motion to the Court.

1.3    "Preliminary Approval Motion" means a motion filed with the Court requesting that the Court consider and preliminarily approve the Settlement.

1.4    "Final Approval Motion" shall mean a motion filed with the Court requesting that the Court consider and, if it finds the settlement to be fair and reasonable, finally approve the Settlement.

1.5    "Final Approval Hearing" means the hearing to be held by the Court to consider and determine whether the proposed Settlement of the Litigation as contained in this Stipulation should be approved as fair, reasonable, and adequate, and whether the Judgment should be entered.

1.6    "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the court.

1.7    "Approved Claim" means a claim submitted no later than the Bar Date by a Class member other than a Representative Plaintiff which is approved by plaintiffs' counsel.

1.8    "Bar Date" means that date specified herein by which Claim Forms submitted by Class Members must be delivered or post-marked in order to be considered for payment pursuant to the terms of the Settlement described in this Stipulation.

1.9    "Class Member" is defined as: All inmates who were housed in San Francisco County Jail 4, located at 850 Bryant Street, who were housed Housing Blocks A, B, or C, in a cell that was impacted by the sewage overflows which took place between January 3, 2017 and September 15, 2018, and have not filed individual claims. Within this are three definitional sub-classes:

a. Sub-Class A:  Direct Sewage Impact and Filed Grievances. These are the inmates who were housed in a cell in which sewage intruded into the cell while they were so housed, either from the toilet in that cell or from an adjacent cell and had also filed a grievance about this situation.

6

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.,* United States District Court, Northern District of California, Case No.3:18-cv-06155

b. Sub-Class B:  Direct Sewage Impact and Did Not File Grievances. These are those inmates who were housed in a cell in which sewage intruded into the cell while they were so housed, either from the toilet in that cell or from an adjacent cell and had not filed a grievance.

c. Sub-Class C: Indirect Sewage Impact. These are those inmates who were housed in a cell in which an adjacent cell had a sewage overflow, but this sewage did not flow into said inmates' cell.  These inmates suffered an indirect impact because all water in the housing unit was shut off and these inmates had no access to drinking water nor use of the toilet until the overflowed toilet was repaired by defendants.

1.10    "Claimants" means Class members who actually file claims pursuant to the procedures set forth in the Court's Preliminary Approval Order.

1.11    "Class Notice of Settlement" means the written notice, together with the Publication Notice, which shall include the general terms of the Settlement, and the date of the Final Approval Hearing. The Class Notice of Settlement shall conform to all applicable requirements of the Federal Rules of Civil Procedure, due process, any other applicable law, and shall otherwise be in the manner and form approved by the Court.

1.12    "Claim Form" means that form which Class Members must submit in order to qualify to participate in the settlement described in this Stipulation.

1.13    "City Conditions" means each of the following events that are express conditions precedent to the validity and enforceability of this settlement: approval of the Settlement and release by the Board of Supervisors by formal adoption of an Ordinance authorizing the Settlement followed by approval by the Mayor.

1.14    "The Parties" means the parties to this Settlement, who are the named ZAYAS Plaintiffs, the Class, Dionn Taylor, and the San Francisco Defendants which include: Defendants SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSEY; UNDER SHERIFF MATHEW FREEMAN; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON and SARGEANT DOLLY.

1.15    "Court" means the United States District Court for the Northern District of California.

1.16    "Class Counsel" or "Zayas Plaintiffs' Counsel" means the class counsel named in Plaintiff's pending motion for class certification, Yolanda Huang, or as the Court's Order for Class Certification

7

designates.

1.17    "Johnson Plaintiffs' Counsels" means Stanley Goff and Fulvio Cajina.

1.18    "Johnson Plaintiffs" means the named plaintiffs in the Johnson, et al. v. City and County of San Francisco, et al.No. 3:18-cv-04890-JCS litigation.

1.19    "Plaintiff Dionn Taylor's Counsel" refers to Yolanda Huang.

1.20    "Defendants' Counsel" or "Defense Counsel" refers to Dennis Herrera, the San Francisco City Attorney or any deputy San Francisco City Attorney assigned to this matter, including but not limited to Kaitlyn Murphy.

1.21    "Class Settlement Fund" means the sum to be paid by the Defendants subject to the City Conditions, totaling $2,100,00 minus the sums paid to settle the claims of the Johnson Plaintiffs, in the amount of $844,355, and Dionn Taylor, in the amount of $ 5,710, which is not subject to reversion, which will be funded and distributed as further described herein for a total of $1,249,935.00.

1.22    "Net Settlement Fund" means the Class Settlement Fund after deduction for attorney's fees, costs and the cost of claims administration.

1.22    "Settlement" refers to the settlement agreement proposed in Section IV of this motion.

## IV.    SETTLEMENT

### A.    MONETARY SETTLEMENT

Subject to the approval of this Court, the fulfilment of the City Conditions, and receipt by the City of a signed Full and Final Release from all named Plaintiffs in the above-referenced actions, the Defendant CITY AND COUNTY OF SAN FRANCISCO shall pay the settlement amount within Twenty (20) days of the Effective Date of the final settlement. The effective date of this settlement shall be the date of the Order Approving the Final Settlement, if the City Conditions have been met, and the City has received a signed Full and Final Release from all named Plaintiffs in the above-referenced actions.  Plaintiffs' counsel have determined among themselves that the distribution of that settlement should be as follows:

A.1 Dionn Taylor shall receive $5,170.00, which includes attorney's fees and costs.  Said payment shall be delivered to Mr. Taylor's counsel and made payable to "Yolanda Huang, Attorney Client Trust Account".

8

A.2 The Zayas Plaintiffs shall receive $1,249,935.00. If the Court approves this settlement as requested, this includes requested attorney's fees and costs including the cost of class administration.  Said payment shall include all attorneys' fees, expenses of the administration of the settlement, and costs, and shall be made payable to "Yolanda Huang, Attorney Client Trust Account," and shall be distributed as specified in the Court's approval of the final class settlement:

A.3 The Johnson Plaintiffs will receive $844,355. Arrangements for the payments to the Johnson Plaintiffs shall be separately negotiated with counsel for the Johnson Plaintiffs.

A.4 This Class Settlement is a claims-made settlement.  Class Members who do not opt out, and who submit Approved Claims, shall each receive as follows:

 (a) Sub-Class A members will share seventy-eight percent (78%) of the total of the Class Settlement Fund minus attorneys' fees and costs, and costs for administering the settlement. Each Sub-Class A member will be entitled to a pro-rata portion based upon the number of his direct sewage impacts as calculated by Plaintiffs' counsel based upon the data obtained through discovery.

(b) Sub-Class B members will share twenty percent (20%) of the total of the Class Settlement attorneys' fees and costs, and costs for administering the settlement.  Each Sub-Class B member will be entitled to a pro-rata portion based upon the number of his direct sewage impacts as calculated by Plaintiffs' counsel based upon the data obtained through discovery.

(c) Sub-Class C members shall be entitled to receive the compensation equal to $10 per incident of indirect sewage impact.

(d) This is a claims-made settlement.

A.5  There will be no reversion to the Defendants.

A.6  Deceased, Divorced, or Bankrupt Claims Members.  Nothing in the Class Action Settlement shall prevent Class benefits from being provided, upon appropriate proof, to, or for the benefit of, an otherwise eligible Class Member, or that Class Member's estate or legal representative, notwithstanding tat Class Member's death, divorce or bankruptcy (whether discharged or ongoing), in accordance with applicable law.

A.7 *Cy Pres* is anticipated to be minimal, and will be that amount remaining when the cost of distribution exceeds the remainder. The *cy pres* recipient shall be Legal Services for Prisoners with Children, a Bay Area not for profit.

**B.      NOTIFICATION TO CLASS MEMBERS**

B.1 At the time of the filing of the Unopposed Motion for Preliminary Approval to this Settlement, and subject to the terms of the Protective Order entered in this action, counsel for the Zayas Plaintiffs said shall provide to Defense counsel, a list of all putative members of the Class and their SFID Numbers. The parties shall jointly request that the Court issue an order permitting Defendant counsel to provide to plaintiffs' counsels, an electronic, searchable copy, preferably in an excel format, of the last known addresses of all putative Class members as identified by Plaintiffs' counsel, as soon as practicable subject to the same Protective Order.

B.2 The parties are committed to achieving the highest claims rate possible in connection with this Class Action Settlement.

**C.      CLASS CLAIMS PROCESS AND ADMINISTRATION**

C.1 After the Preliminary Approval Order, a short form "Notice of Settlement", shall be mailed to all Class members within 10 days of the receipt from Defendants of Class Members' addresses.  The Notice will inform class members that they have sixty days to opt out or file a Claim Form, or to object to the Settlement following the procedure set forth in the Notice.  The short form Notice shall also inform all recipients that they may request by mail or review online a copy of the Long Form Notice.  The short form Notice also inform all recipients that Claimants will be able to fill out and submit the Claim Form online, and that information on the opt-out and objections are also available online.

C.2 The Long Form Notice, the Claim Form, and information on opt-out and objections shall be available at a dedicated website.

C.3 Claimants will be able to fill out and submit the Claim Form online.

**D.      REQUESTS FOR EXCLUSION**

D.1 Opting Out. The Class Notice will provide instructions regarding the procedures that must be followed to opt out of the Class pursuant to Federal Rule of Civil Procedure 23(c)(2)(B)(v). The Parties agree that, to opt out validly from the Class, a Class Member must personally sign (electronic signatures, including Docusign, are invalid and will not be considered personal signatures) and send a written request to opt out stating "I wish to exclude myself from the Class in *In re Zayas et al. v. San Francisco County Sheriff's Department, et al.* (No. 3:18-cv-06155)," (or substantially similar clear and unambiguous language) to the

10

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.,* United States District Court, Northern District of California, Case No.3:18-cv-06155

Claims Administrator on or before the Opt-Out Deadline (postmarked or emailed no later than the Opt-Out Deadline). The written request must include the Class Member's name, address, date of birth or San Francisco Jail Number. The Parties retain discretion to determine whether any opt-out request substantially complies with the requirements above. The Claims Administrator will provide copies of all opt-out requests to Plaintiffs' Counsel and Defendants' Counsel within seven days of the receipt of each such request.

D.2.  Consequences of Failure to Opt Out in a Timely and Proper Manner. All Class Members who do not timely and properly opt out of the Class will in all respects be bound by all terms of this Class Action Settlement and the Final Approval Order upon the Effective Date.

D.3  Opting Out and Objecting Are Mutually Exclusive Options.  Any Class Member who elects to opt out pursuant to this Section may not also object to the Settlement. Any Class Member who elects to object pursuant to Section 8 herein may not also opt out pursuant to this Section.

### E.        OBJECTIONS TO THE SETTLEMENT

E.1 Manner of Objecting.  The Class Notice will provide instructions regarding the procedures that must be followed to object to the Settlement pursuant to Federal Rule of Civil Procedure 23(e)(5). Provided that a Class Member has not submitted a written request to opt out, as set forth in Section 7, the Class Member may present written objections, if any, explaining why he or she believes the Class Action Settlement should not be approved by the Court as fair, reasonable, and adequate. No later than such date as is ordered by the Court, a Class Member who wishes to object to any aspect of the Class Action Settlement must file with the Court, or as the Court otherwise may direct, a written statement of the objection(s). The written statement of objection(s) must include a detailed statement of the Class Member's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Class Member wishes to bring to the Court's attention. That written statement also will contain the Class Member's printed name, address, telephone number, and either San Francisco Jail number or date of birth and a statement that the Class Member has reviewed the Class definition and has not opted out of the Class, and any other supporting papers, materials, or briefs the Class Member wishes the Court to consider when reviewing the objection.

E.2  Objecting Through Counsel.  A Class Member may object on his own behalf or through a lawyer hired at that Class Member's own expense, provided the Class Member has not sub mitted a written request to opt out, as set forth in Section 7. The objection must state whether it applies only to the objector, to a specific

subset of the Class, or to the entire Class, and also state with specificity the grounds for the objection. Lawyers asserting objections on behalf of Class Members must: (1) file a notice of appearance with the Court by the date set forth in the Order Approving Notice and Class Certification Order, or as the Court otherwise may direct; (2) file a sworn declaration attesting to his or her representation of each Class Member on whose behalf the objection is being filed or file (in camera) a copy of the contract between that lawyer and each such Class Member; and (3) comply with the procedures described in this Section. Lawyers asserting objections on behalf of Class Members also must file a sworn declaration that specifies the number of times during the prior five-year period they have objected to a class action settlement on their own behalf or on behalf of a class member.

E.3  Intent to Appear at the Fairness Hearing.  A Class Member (or counsel individually representing him, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in the Order Approving Notice, a written notice of his or her intent to appear at the Fairness Hearing, in accordance with the requirements set forth in the Order Approving Notice, or by such time and in such manner as the Court may otherwise direct.

E.4  Consequences of Failure to Object in a Timely and Proper Manner.

Unless the Court directs otherwise, any Class Member who fails to comply with the provisions of this Section will waive and forfeit any and all rights he may have to object to the Class Action Settlement and/or to appear and be heard on said objection at the Fairness Hearing.

Failure to object waives a Class Member's right to appeal.

## F.    DUTIES OF THE NOTICE AND CLAIMS ADMINISTRATOR

The Notice and Claims Administrator shall be responsible for, without limitation:

F.1  printing, mailing by First-Class U.S. Mail, postage paid, or arranging for the mailing of, twenty-five and/or e-mailing of, the Short Form Notice (attached as Exhibit 2);

F.2  updating Class Member address information prior to mailing;

F.3  handling returned notice-related mail not delivered to Class Members;

F.4  attempting to obtain updated address information for any Short Form Notices returned without a forwarding address;

F.5  responding to requests for Long Form Notice packages;

F.6  responding to requests from Class Counsel or Defendants 'Counsel;

12

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.*, United States District Court, Northern District of California, Case No.3:18-cv-06155

F.7  assisting in the creation of Notice-related content for the Settlement Websites to which Class Members may refer for information about the Action and the Class Action Settlement;

F.8  otherwise implementing and/or assisting with the dissemination of the notice of the Class Action Settlement;

F.9  consulting on the Settlement Website during the Settlement Benefit Period;

F.10  Not later than ten (10) days before the date of the Fairness Hearing, the Notice Administrator shall file with the Court a list of those persons who have opted out or excluded themselves from the Settlement. The Notice Administrator shall file with the Court the details outlining the scope, method and results of the Class Notice Program.

F.11  The Claims Administrator and the Parties shall promptly after receipt, provide copies of any requests for exclusion, objections and/or related correspondence to each other.

F.12  After the Order of Final Approval, processing and issuing the Class Member Payments from in accordance with the Final Order.

### G.    FINAL APPROVAL

A Final Approval Hearing shall be set no more than 120 days after the Court issues its Preliminary Approval Order.

### H.    CAFA COMPLIANCE

Defendants will provide the appropriate notices pursuant to 28 U.S.C. § 1715.

## V.    POINTS AND AUTHORITIES IN SUPPORT

### A.    LEGAL STANDARD FOR APPROVAL

Federal Rule of Civil Procedure 23(e) governs a district court's analysis of the fairness of a proposed class action settlement and creates a multistep process for approval. First, a court must determine that it is likely to (1) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (2) certify the settlement class after the final approval hearing. *See* Fed. R. Civ. P. 23(e)(1)(B). *see also* Fed. R. Civ. P. 23 2018 advisory committee note (standard for directing notice is whether the Court "likely will be able both to approve the settlement proposal under Rule 23(e)(2) and . . . certify the class for purposes of judgment on the proposal"). Second, a court must direct notice to the proposed settlement class,

13

describing the terms of the proposed settlement (Rule 23(e)(1) and the definition of the proposed class, to give them an opportunity to object to or to opt out of the proposed settlement. *See* Fed. R. Civ. P. 23(c)(2)(B), (e)(1), (e)(5). Third, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate, and certify the settlement class. Fed. R. Civ. P. 23(e)(2). In this District, a movant's submission should also include the information called for under the District's recently updated *Procedural Guidance for Class Action Settlements*. *See* N.D. Cal, *Procedural Guidance for Class Action Settlements*, N.D. CAL (Dec. 5, 2018), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ ("*Procedural Guidance*").

## B.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

Rule 23(e)(2) identifies criteria for the Court to use in deciding whether to grant preliminary approval of a proposed class settlement and direct notice to the proposed class. The Class Settlement proposed here satisfies each one.

### 1.     The Settlement is the Produce of Good Faith, Informed, and Arm's-Length Negotiations.

The proposed Settlement arises out of a serious, informed, and non-collusive negotiations facilitated by Magistrate Judge Corley over the course of 4 months. *See* Fed. R. Civ. P. 23(e)(2)(B). This followed an all-day mediation effort with a private neutral. A settlement process facilitated by a court-appointed mediator weighs heavily in favor of approval. *Rosales v. El Rancho Farms*, No. 1:09-23 CV-00707-AWI, 2015 WL 4460635, at *16 (E.D. Cal. July 21, 2015) (report and recommendation adopted, 2015 WL 13659310 (E.D. Cal. Oct. 2, 2015) ("[T]he 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'") (citation omitted); *Pierce v. Rosetta Stone, Ltd*., No. C 11-01283 SBA, 2013 WL 5402120, at *5 (N.D. 27 Cal. Sept. 26, 2013) (same).

### 2.     The Settlement Provides Significant Benefits to Class Members.

The Settlement provides substantial Class relief, considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; and (iii) the fair terms of the determination of class benefit based upon the metric of extent of sewage exposure and number of

14

exposures.  *See* Fed. R. Civ. P. 23(e)(2)(C).  All three separate litigations support this Settlement, acknowledging the uncertainty in whether any litigant or whether the Class could achieve a better outcome through further litigation.  Continued litigation, trial, and appeal would certainly not secure compensation as quickly as it will take place under the current negotiated settlement.

a)      <u>*The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation.*</u>

The Settlement secures significant benefits, even in the face of the inherent uncertainties of litigation. Compromise in exchange for certain and timely provision of the benefits under the Settlement is an unquestionably reasonable outcome. *See Nobles v. MBNA Corp*., No. C 06-3723 13 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair.") (citing *Kim v. Space Pencil, Inc*., No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal.16 Nov. 28, 2012)) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant").

There are significant risks in this case. The issues raised and which would have to be litigated, include the applicability of the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), the necessity for exhaustion of administrative remedies, and whether in fact administrative remedies were exhausted or waived. The outcome of this litigation could have a significant impact on the Class' prospects of a favorable resolution.  Defendants also indicated that they would challenge Plaintiffs' damage theories, and also on the grounds that damages are not calculable on a class-wide basis. And even if a class were to be certified and upheld on appeal, the Class would face the risk, expense and delay of trial and potentially lengthy appellate process, likely delaying any recovery for years.

Avoiding years of delay through additional litigation in exchange for the immediate economic certainties is a compelling component of Plaintiffs and class members support for this Settlement.

b)      <u>*Class Members Are Served By a Straightforward Claims Process*</u>

Each Class Member will receive information about the Settlement through the proposed Notice Program.  Class Members will then submit a simple Claim form online or by mail.  After a

15

claim is reviewed and the claimant is verified to be a class member, the Class Member will promptly receive their Class Member payment.

### 3. The Proposed Settlement Treats All Class Members Equitably Relative to One Another

The proposed Settlement fairly and reasonably allocates benefits among Class Members without any unwarranted preferential treatment of class representatives or segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D).  Specifically, while acknowledging the legal issue of the requirement for the exhaustion of administrative remedies and that those class members who filed grievances were instrumental in calling attention to the underlying issues, all class members, including those who suffered only indirect sewage impacts. The ratio of Class members who suffered filed grievances receiving 78% and those who did not file grievances receiving 20% was extensively negotiated among the Plaintiffs with Judge Corley. The added benefit to the class will be that this is a claims made settlement, without a reversion. In the event, there are unclaimed funds, these will be distributed *cy pres* to Legal Services for Prisoners with Children. There is no incentive award to the named plaintiffs, an added measure of equity. Instead, all class members who filed grievances are treated alike.

### C. THE COURT WILL BE ABLE TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES UPON FINAL APPROVAL.

Certification of a settlement class is a well-established two-step process. Newberg & Conte, *Newberg on Class Actions* §11.25 at 38-39 (4th ed. 2002); *see also* Carlos F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004); *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC) 2016 WL 4010049 at *10 (N.D. Cal. July 26, 2016) (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). First, the Court must find that the proposed settlement class satisfies Rule 23(a)'s four requirements. *See* Fed. R. Civ. P. 23(a); *Windsor*, 521 U.S. at 613-14. Second, the Court must find that "a class action may be maintained under either Rule 23(b)(1), (2), or (3)." *Windsor*, 521 U.S. at 614. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there will be no trial." *Windsor*, 521 U.S. at 620. *See also Parsons v. Ryan*, No. CV12-0601-PHX-NVW, 2013 U.S. Dist.

16

LEXIS 46295 (D. Ariz. Mar. 6, 2013)  2013 U.S. Dist. LEXIS 46295 at *9 (D. Ariz. Mar. 6, 2013) (granting class certification in case challenging conditions of confinement in Arizona isolation units and noting that "the prohibition reinforced by the Supreme Court in *Amgen*").

        1.     The Zayas Plaintiffs Have Met The Requirements of Rule 23(a).

        *a)*     *The Size of the Class Satisfies the Numerosity Requirement*

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the class exceeds forty members. *Californians for Disability Rights, Inc., v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008) ("various courts have found that the numerosity factor is satisfied if the class comprises 40 or more members"). *E.g., Hawkins v. S2Verify, No.* C 15-03502 WHA, 2016 WL 3999458, at *3 (N.D. Cal. July 26, 2016) (citing *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010)). *see also* William B. Rubenstein, et al., *Newberg On Class Actions* § 3.12 at 198 (5th ed. 2011); 5 Moore's Federal Practice – Civil § 23.22(3)(a) (3d ed. 2003).

Additionally, a court may make common sense assumptions to support a finding that joinder would be impracticable. *In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) (citing 1 Robert Newberg, *Newberg On Class Actions* § 3.3 (4th ed. 2002)). Plaintiffs need not establish that joinder is impossible, but merely that joining all class members would be difficult or inconvenient. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir. 1964).

The proposed Inmate Class is sufficiently numerous that joinder of all members of the class would be impracticable and unfeasible. Zayas Plaintiffs seek to certify a class of all approximately 2,375 individuals (which is minus Mr. Taylor and the Johnson plaintiffs), who were incarcerated at County Jail 4 and were either directly or indirectly impacted by the sewage overflows from January 2017 through September 2018. It would be impracticable, and a waste of judicial resources, to require each member of the 2,375-member class to litigate these questions. *See, e.g., Gay v. Waiters and Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 (9th Cir. 1977) (reversing denial of class certification for lack of numerosity of class of 184 plaintiffs, noting that "[c]ertification of a class under Rule 23 has been granted many times on lesser numbers than in the present case"); *Sagers v. Yellow Freight*

*System, Inc.*, 529 F.2d 721, 734 (5th Cir. 1976)(110 members "clearly a sufficient number"). The numerosity requirement is satisfied.

>     b)    *Commonality Requirement of Rule 23(a)(2) Is Met*

To meet the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has construed this requirement "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988). The Supreme Court recently reiterated that class claims must "depend upon a common contention . . . [that is] capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, "[w]hat matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation and quotation marks omitted). "Even a single [common] question will do." *Id.* at 358.

### (1)  Commonality is Demonstrated by Challenge to a Systemwide Condition.

In a civil rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members . . .  In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). *See also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("We have found '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class'") (citations omitted).

In the present case, all class members were subjected to the same condition, which was solely under the control of defendants, and which resulted from the same circumstances, namely malfunction in the County Jail 4 plumbing system that routinely and regularly caused sewage to backup and overflow into the cells of Housing Blocks A, B and C.  The common condition all inmates were forced to endure were unconstitutional conditions of confinement where sewage regularly intruded into the living space, at minimum the regular sewage smell, the bacteria load in the air and living space, and the continual dampness.

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(a)     **Challenges by Inmates to Conditions of Confinement Qualify for Class Treatment.**

Challenges to general jail conditions have been found appropriate for class treatment. For example, a class was certified consisting of former and current county jail detainees who, like the class herein, were forced to endure common conditions, to wit, sleeping on cell floors based upon the jail's stated policy. *Thomas v. Baca*, 231 F.R.D. 397, 400 (C.D. Cal. 2005). *See also, e.g.*, *Augustin v. Jablonsky* (*In re Nassau County Strip Search Cases*), 461 F.3d 219 (2d Cir. 2006) (abuse of discretion to refuse to certify Rule 23(b)(3) strip search class for liability pursuant to Rule 23(c)(4)(A), where there was a blanket strip search policy; on remand, district court should reconsider whether damages component of case should also be certified); *MacNamara v. City of N.Y*, 275 F.R.D. 125, 151-154  (S.D.N.Y. 2011) (certifying conditions of confinement class of arrestees seized during antiwar protests); *Chang v. United States*, 217 F.R.D. 262, 267 (D.D.C. 2003) (granting class certification to group arrested in connection with antiwar protests, Court observes plaintiffs make similar allegations with respect to conditions of confinement).

Any minor factual differences among members of the class with respect to their individual length of incarceration do not undermine commonality.  *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (rejecting defendant's argument that class was improperly certified in prison case alleging several forms of systemic disability discrimination and stating that "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality"). *Rodriguez v. Hayes* is instructive on this point. 591 F.3d 1105 (9th Cir. 2010).  In *Rodriguez*, the plaintiff sought certification of a class of individuals held in immigration detention in California for more than six months without a hearing. *Id.* at 1111. The Ninth Circuit rejected the argument that class certification should be denied because each individuals' case turned on "divergent questions of statutory interpretation and consideration of different factual circumstances," finding that "the commonality requirement asks us to look only for some shared legal issue or a common core of facts." *Id.* at 1122. Where plaintiffs allege that they were required to endure similar conditions of confinement, the courts have found that the commonality element was met. *Thomas v. Baca*, 231 F.R.D. 397, 400 (C.D. Cal. 2005). In the present case, the regular intrusions of

overflowing sewage was the common element that all members of the Zayas plaintiff class shared and which presented common questions of fact and legal issues.

**(b)     The Claims of the Class Representatives Are Typical of the Claims of the Class and Subclass.**

Rule 23(a)(3)'s typicality requirement counsels that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988). Typicality "assure[s] that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanlon*, 976 F.2d at 508). Thus, where a plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). *See also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). While the claims of the entire class need not be identical, the class representatives must generally "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks and citation omitted). *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

20

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
*Zayas, et al. v. San Francisco County Sheriff's Department et al.*, United States District Court, Northern District of California, Case No.3:18-cv-06155

The Ninth Circuit has emphasized that it "do[es] not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis,* 275 F.3d 849, 869 (9th Cir. 2001). *See also Baby Neal v. Casey,* 43 F.3d 48, 58 (3rd Cir. 1994) ("where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice"); *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990) (Rule 23 "does not require the named plaintiffs to be identically situated with all other class members," only that their situations be "sufficiently parallel to insure a vigorous and full representation of all claims for relief") (citation and quotation marks omitted).

Here the named plaintiffs allege that they have experienced the same or similar harm, rely on the same legal theories.  Their claims are typical of those of the class. All of the plaintiffs were in custody at County jail 4 in either Housing Block A, B or C, the affected housing blocks.  All name plaintiffs suffered the direct and indirect impacts of the sewage overflows, during the subject period of time.   The named plaintiffs possess the "same interest and suffer the same injury" as class members, thus satisfying the typicality requirement. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998) (overruled on other grounds by *Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338 (2011)); *Krzesniak v. Cendant Corp*., No. C05-05156 MEJ, 2007 WL 1795703 at *7 (N.D. Cal. June 20, 2007) (citation omitted).

Both the Class Representatives and Class Members will similarly – and equitably – benefit from the relief provided by the Settlement. The typicality requirements are satisfied.

### (c)  The Proposed Class Representatives and Class Counsel Will Fairly and Adequately Protect the Interests of the Class and Subclass.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is rooted in due-process concerns—'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols., Inc.,* 715 F.3d 1157, 1165 (9th Cir.

21

2013) (quoting *Hanlon*, 150 F.3d at 1020). Adequacy entails a two-prong inquiry: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020).  Both prongs are readily satisfied here.

The Settlement Class Representatives have no interests antagonistic to Settlement Class Members and will continue to vigorously protect class interests, as they have throughout this litigation. *See Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 1461944, at *2-3 (N.D. Cal. Apr. 14, 2016). Settlement Class Representatives will fairly and adequately represent the interests of all proposed class members. As set forth above, the plaintiffs' interests are entirely aligned with the interests of the proposed class and subclasses. Fed. R. Civ. P. 23(a)(4). The Representatives understand their duties as class representatives, have agreed to consider the interests of absent Settlement Class Members, and have actively participated in this litigation. *See* Huang Decl. ¶ 12. *See, e.g., Trosper v. Styker Corp.*, No. 13- CV-0607-LHK, 2014 WL 4145448, at *29 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a 'rudimentary understanding of the present action and ... a demonstrated willingness to assist counsel in the prosecution of the litigation.'"). The proposed Settlement Class Representatives are more than adequate.

2.    <u>Plaintiffs Met the Requirements of Rule 23(b)(3).</u>

In addition to meeting the requirements under Rule 23(a), Plaintiffs must also establish at least one of the grounds for maintaining a class action under Rule 23(b) before a class will be certified. *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-cv-05596-JST, 2015 WL 5569462, at *4 (N.D. Cal. Sept. 22, 2015). Plaintiffs seek certification under Rule 23(b)(3), and alternatively, under Rule 23(b)(2) and (1). "In order to be maintained as a class action, a representative suit must comply with the requirements of each of the four subsections of Rule 23(a) and must satisfy the additional requirements of at least one of the three subdivisions of Rule 23(b)." (Newberg, § 4:1.)

Rule 23(b)(3) provides that class certification should be granted where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Four factors guide the determination of whether common questions of law or fact predominate, and whether a class action is the superior method of adjudicating the controversy: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P 23(b)(3).

*a)* <u>*Common Questions of Law and Fact Predominate*</u>

There is no question that common questions of law or fact predominate in this case. Plaintiffs alleged that the jail treated the class members as a class.   At trial, all class members would argue they were subject to the same conditions of confinement in the same jail. Whether this situation is clear demonstration of deliberate indifference, whether defendants' inaction subjected all plaintiffs to unconstitutional conditions of confinement, and whether defendants' actions and inactions violated plaintiffs' legal rights are common questions of law and fact.

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The question is not whether individualized damages determinations will be necessary, but, rather, the legal or factual questions that qualify each class member's case as a genuine controversy. *Thomas v. Baca*, 231 F.R.D. 397, 402 (C.D. Cal. 2005) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Where, as here, a common nucleus of operative facts forms the central issue in the case, the predominance hurdle will have been cleared even if individualized issues of proof are present. *See, e.g.*, *Dornberger v. Metropolitan Life Insurance Company*, 182 F.R.D. 72, 77 (S.D.N.Y. 1998) (Rule 23(b)(3) class where insurance policies sold in nine overseas countries without regulatory approval); *Wells v. Allstate Insurance Co.*, 210 F.R.D. 1, 12 (D.D.C. 2002) (Rule 23(b)(3) class certified where common questions predominated in consumer action involving denial of insurance claims); *Rossini v. Olgivy & Mather*, 798 F.2d 590, 598-99 (2d Cir. 1986) (reversing decertification of Rule 23(b)(3) class as to employee claims of sex discrimination in training and promotion alleging pattern and  practice of employer).

23

A common question whether a class is manageable or predominance issues - is not an issue in this case. As many circuits have observed, these issues resolve, as in this case, because a settlement has been reached.  *See, e.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("it may be that if and when the defendants are determined to have violated the law separate proceedings of some character will be required", but that "prospect need not defeat class treatment"; after a liability determination favorable to the class, "a global settlement . . . will be a natural and appropriate sequel").

In this case, the class members' damages are generally uniform.  The fact that the plaintiffs are also seeking monetary compensation does not alter the conclusion that this is an appropriate (b)(2) class. A claim of this type is routinely certified as a (b)(2) class action. *See* cases cited at §V.A., *supra*; *Washington Mobilization Committee v. Cullinane*, 400 F.Supp. 186, 218 (D.D.C.1975) (aff'd in part, reversed in part on other grounds 566 F.2d 107 (D.C. Cir. 1977)) (certifying injunctive relief class consisting of consisting of all persons who have participated in or observed and who intend to participate in or observe lawful, peaceful, orderly and non-obstructive public demonstrations). *See also Thomas v. Baca,* 231 F.R.D. 397, 398 (C.D. Cal. 2005) (certifying class of LASD detainees forced to sleep on the floor under both (b)(2) and (b)(3)).

### 3.    Alternatively, Rule 23(b)(1)'s Requirements Are Met

Rule 23(b)(1) provides that a class action may be maintained where prosecution by or against individual class members would create a risk of either (a) inconsistent or varying adjudications that could establish incompatible standards, or (b) adjudication with respect to individual class members that would, as a practical matter, dispose of others' claims or substantially impair or impede their ability to defend their interests. Although certification under this rule is relatively rare, it has been expressly applied in protest cases. *See,* e.g., *Chang v. United States*, 217 F.R.D. 262, 273 n.5. (D.D.C. 2003).

#### a)    *Class Treatment Is The Superior Methods for the Resolution of This Case.*

Superiority asks "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). In

24

1   other words, it "requires the court to determine whether maintenance of this litigation as a class

2   action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168,

3   1175-76 (9th Cir. 2010). Under Rule 23(b)(3), "the Court evaluates whether a class action is a

4   superior method of adjudicating plaintiff's claims by evaluating four factors: '(1) the interest of each

5   class member in individually controlling the prosecution or defense of separate actions; (2) the extent

6   and nature of any litigation concerning the controversy already commenced by or against the class;

7   (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the

8   difficulties likely to be encountered in the management of a class action.'" *Trosper v. Styker Corp*.,

9   No. 13- CV-0607-LHK, 2014 WL 4145448, at *17 (N.D. Cal. Aug. 21, 2014).

10      Class treatment here is far superior to the litigation of thousands of individual inmate actions.

11   "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling

12   the prosecution of separate actions. There would be less litigation or settlement leverage, significantly

13   reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. *See also Wolin*,

14   617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases, particularly where

15   common issues predominate for the proposed class, is an inferior method of adjudication."). The

16   damages sought by each Settlement Class Member are small relative to the cost of prosecuting each

17   one's individual claims. *See Smith v. Cardinal Logistics Mgmt. Corp*., No. 07-2104 SC, 2008 WL

18   4156364, at *11 (N.D. Cal. Sept. 5, 2008) (small interest in individual litigation where damages

19   averaged $25,000-$30,000 per year of work).

20      Class resolution is superior from an efficiency and resource perspective. Indeed, "[i]f Class

21   Members were to bring individual lawsuits against [Defendants], each Member would be required to

22   prove the same wrongful conduct to establish liability and thus would offer the same evidence."

23   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*., No. 2672 CRB (JSC), 2016

24   WL 4010049 at *12 (N.D. Cal. July 26, 2016). With a class of approximately 2500, "there is the

25   potential for just as many lawsuits with the possibility of inconsistent rulings and results." *Id.* "Thus,

26   class-wide resolution of their claims is clearly favored over other means of adjudication, and the

27   proposed Settlement resolves Class Members' claims at once." *Id.*  Superiority is met here, and Rule

28   23(e)(1)(B)(ii) is satisfied.

**D.    THE PROPOSED SETTLEMENT MERITS APPROVAL UNDER THIS DISTRICT'S PROCEDURAL GUIDANCE.**

The following is a response to this District's *Procedural Guidance* for preliminary approval.

1.    The Settlement Class Is a Clearer Defined Class than The Litigation Class.

The Settlement Class is defined based upon the jail's written records indicating who at the jails had direct interface with the sewage overflows.  The litigation class included inmate workers, but there are no written records indicating what assignments, on what dates were completed by inmate workers, nor the extent, if any of inmate workers contact with the sewage and so in the Settlement class, inmate workers are not included.

2.    The Claims To be Released

The Claims To be Released include all claims by the class members, which are limited to the inmates in Cell Blocks A, B and C.

3.    The Settlement Recovery is A Fair Settlement Compared to The Recovery Available If Plaintiffs Had Prevailed on Each of Their Claims.

The anticipated class recovery will be $1,249,935.00.  The settlement was premised on calculations of the total number of class members, and the total number of incidents of direct sewage and indirect sewage, filtered by the number of class members who filed grievances.  The settlement amount is premised on a compensation level of $550 for each day of a direct sewage impact for those who filed grievances.

If Plaintiffs had fully prevailed on each of their claims, it is possible that they would receive higher damages for each day of a direct sewage impact.  However, success would not necessarily be as broadly shared among the class, because of the PLRA requirements of exhaustion of administrative remedies, so while a much smaller number of individuals may receive higher damages, it is conceivable that a significant majority would receive nothing.  The Settlement secures compensation that is at a significant level, guarantees it for the class, and avoids the lengthy delay of litigation and appeal.

4.    The Proposed Allocation Plan For The Settlement Fund.

The *Procedural Guidance* requires an explanation of the proposed allocation for the settlement fund. *See Procedural Guidance* (1)(f). The settlement provides three compensation levels:

26

of 78% of the Net Settlement Fund for direct sewage impact for those who filed grievances pro rata by days of impact, 20% of the Net Settlement Fund for those who did not file grievances pro rata by days of impact, and $10 per day for those with indirect sewage impacts. The differences are the result of significant arm's length mediation across all three related litigations, with Plaintiffs being clear that there needed to be parity across all the lawsuits.

          5.      A Substantial Number of Class Members Are Incentivized and Expected to Participate.

This settlement is one of the few class action settlements with a damages payout regarding conditions of confinement. Having a Settlement Fund with a significant payout incentivizes class members and we anticipate a high participation rate. In a prior class action involving conditions of confinement Plaintiffs' counsel was previously involved in, there was an 85% participation rate. Most likely, those with direct sewage impacts will have the highest participation rate, perhaps even higher than 85%. It could be that the Class members who only have indirect sewage impacts will have a lower participation rate because the allocation per class member is small.

          6.      There Is No Reversion In This Case

This Settlement is a designed as a "claims-made" settlement, meaning every valid claim will be compensated. Thus "[i]f every consumer comes in for the settlement…, every penny…gets spent." *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC) 2016 WL 4010049 at *22 (N.D. Cal. July 26, 2016). There is no reversion. *Procedural Guidance* 1(g).

          7.      Settlement Administration

Due to the complexities with the covid-19 shelter at home directives, only one firm submitted a bid. Plaintiffs' counsel contacted several entities and was able to secure the commitment of a highly conscientious local law firm, Greenfire Law, PC, to be the settlement administrator. *See* Huang Decl. ¶ 10. Greenfire estimates that the administrative costs of administering the settlement will be approximately $47,000 to $75,000.00, depending on the degree of difficulty with locating class members.   Plaintiffs' counsel has not had engagement with this law firm in the last two years.

8.   The Attorneys' Fees Are Fair, Reasonable and Adequate.

When awarding attorneys' fees, the court has a duty to ensure that the claim for attorneys' fees, like every other provision in the settlement, is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount"); *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, 851 F.Supp. 2d 1040, 1073 (S.D. Tex. 2012) (fee award considered reasonable if proportionate to actual value created for or received by class).

*a)*   *Percentage of the Fund Method of Calculating Fees*

The requested attorneys' fee of $312,075 is 25% of the settlement amount. The general trend in class action fee awards is toward the percentage of the fund method. It avoids numerous drawbacks of the lodestar approach and is preferable because "the attorneys will receive the best fee when the attorneys obtain the best recovery for the class." Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (1998) ("Silber and Goodrich"). Therefore, this approach more closely aligns with the interests of the counsel and the class. *See, e.g,. Camden I Condominium Association v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991).

Nationally, the average percentage of the fund award in class actions is approximately one-third. The Federal Judicial Center published a report in 1996, which was based on an empirical study of four Federal District Courts. Federal Judicial Center, T. Willging, L. Hooper, & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* (1996) ("FJC Report"). The study found that the "fee recovery rate infrequently exceeded the traditional 33.3% contingency fee rate. Median rates ranged from 27% to 30%. Most fee awards in the study were between 20% and 40% of gross monetary settlement." *Id*. at 68-69. The Report concluded that "attorney's fees were generally in the traditional range of approximately one-third of the total settlement." *Id*. at 90. Another study cited by Silber and Goodrich found that attorney's fees in class actions averaged approximately 32% of the recovery, regardless of the class size, and averaged 34.74% when the fees and expenses were added together.

Silber and Goodrich, 17 Rev. Litig. at 545-46. Applying the Ninth Circuit's 30% range would result in attorneys' fees of 30% would result in an attorneys' fee award of $378,980.00.

The attorney's fees requested, with costs included is less than 26% of the total award. This is lower than the Ninth Circuit's percentage range, on the low end of the acceptable range of fee awards, and reasonable under all the factors at play.

(1)   Lodestar standards.

Class action attorneys' fees may also be awarded based on the lodestar method. *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011); *Staton v. Boeing Co.,* 327 F.3d 938, 968 (9th Cir. 2003). Lodestar is defined generally as the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Where a plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee. *Id.* at 435. Full compensation normally encompasses all hours reasonably expended on the litigation. *Id.*

*City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986).  *See also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (reasonable fees calculated according to prevailing market rates in the relevant community); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992) (the court should pay close attention to fees charged by lawyers of reasonably comparable skill, experience, and reputation).)

Courts often consider the following factors when determining the appropriate

class fund fee award: (1) the result obtained for the class;(2) the effort expended by counsel; (3) the risks of non-payment assumed by counsel; (4) counsel's skill; (5) the complexity of the issues; (6) counsel's experience; (7) the reaction of the class; and (8) the comparison with counsel's lodestar. *See, e.g., In re Quinus Security Litigation*, 148 F.Supp. 2d 967, 973-74 (N.D. Cal. 2001). Here, the lodestar amount is 435 hours. At the prevailing rate for someone of Yolanda Huang's experience, and an hourly rate of $675, with paralegal costs included results in a lodestar of $312,075. The fee award is clearly reasonable.

9.    Incentive Awards

Plaintiffs will not be seeking service awards. Representatives will receive the same compensation as all other class members, and this compensation will be based upon their actual sewage impact, and whether they filed grievances.

10.    Notice of Compliance with CAFA

As required by CAFA, the settling Defendants will serve notices in accordance with the requirements of 28 U.S.C § 1715(b) within ten days of the filing of this motion.  This settlement does not provide for a recovery of coupons (28 U.S.C. § 1712), does not result in a net loss to any Class Member (28 U.S.C. § 1713), and does not provide for payment of greater sums to some Class Members solely on the basis of geographic proximity to the Court (28 U.S.C. § 1714), this Settlement fully complies with CAFA.

11.    Information About Past Distributions in Comparable Class Settlements.

The *Procedural Guidance* requests estimates on the number and percentage of claimants based on recent similar settlements. Class action settlements involving conditions of confinement are rare.  Most class actions involving conditions of confinement are for injunctive relief only.  The only other such class action plaintiffs are aware of involving damage payments for conditions of confinement is *Angell et al v. City of Oakland, County of Alameda, et al.*, C13-0190 NC, N.D. Cal. In this 2015 settlement involving Occupy, the class was approximately 350 people, and 85% of the claimants filed claims.

This case will utilize a similar notice and outreach program. Sub-Class A members, those who suffered direct sewage and with filed grievances will receive sizable checks, and so class members in Sub-Class A are gauged to be motivated to participate. Sub-Class B, has a larger number of class members and many with only one or two exposures to direct sewage, however, plaintiffs believe the compensation is sufficient to motivate participation. It is in Sub-Class C that plaintiffs believe participation may be lower but Plaintiffs do not believe Class Members, if informed of the settlement, would leave money on the table at a rate to impair the Settlement's fairness, adequacy and reasonableness.

30

### E.    THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE.

Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the  proposal." "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'" *Churchill Vill., L.L.C. v. GE,* 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). For a Rule 23(b)(3) Settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

The proposed notice program meets these standards.  The Program includes a Short and Long Form Notice, and a comprehensive Settlement Website (www.SFjailsewagelawsuit.com) which will be live once the Preliminary Approval is granted. These notices are clear and complete, and meet all the requirements of Rule 23 and the *Procedural Guidance*. *See Procedural Guidance* (3).

The Short form Notice is in an eye-catching "one-age postcard" format, designed to capture Class Members attention with concise plain language and convey the basic structure of the Settlement. The Short form Notice directs the readers to the Settlement Website for more information[2], and also provides a phone number and email contact information. Plaintiffs and Class Administrator, Greenfire Law, PC, plan to have a 24-hour, live answering service to receive calls. The service will also be able to provide basic information as well as to direct callers to the website. On the website, the Long form Notice will be available. If approved by the Court, a claim form can also be printed on the back of the Short Form Notice to enable claims filing with greater ease.

---

[2] These notices cover all of the elements outlined in Rule 23(c)(2)(B).

The principal method of reaching Class Members will be through individual direct mail notice, consisting of the short form notice, in envelopes printed clearly with the statement: IMPORTANT – Contains Information About San Francisco Jails Sewage Class Action Settlement to the last known address as provided by Defendants.  Direct mail notice will be coupled with a robust paid-media campaign including advertisement in local San Francisco newspapers including the San Francisco Post, the Examiner and the Chronicle, the telephone number and a Settlement Website. Huang Decl. ¶12. This Notice Plan, grounded in individual notice, comports with accepted standards and with this District's *Procedural Guidance* regarding notice and opt-outs.

### F.    THE PROPOSED FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the fairness hearing, at which the Court may hear any evidence and argument necessary to evaluate the Settlement and the application for attorneys' fees and costs.

| | |
|---|---|
| _____, 2020<br>[30 days after Preliminary approval] | Mailing of Short form Class Notice |
| _____, 2020<br>[90 days after mailing of notice and 100 days after Preliminary approval] | Deadline for Settlement Class Members to file:<br>1.  Any object and basis therefor;<br>2) notice of intent to appear at the fairness hearing, indicating with or without counsel; or<br>3)  Opt-out: Request Exclusion |
| _____, 2020<br>[90 days after mailing of notice and 100 days after Preliminary approval] | Bar Date:  Deadline for Settlement Class Members to Submit A Settlement Claim form |
| _____, 2020<br>[100 days after Preliminary approval] | Deadline for Parties to file:<br>a. List of persons who made timely and proper requests for exclusion;<br>b. Proof of Class Notice; and<br>c. Motion and Memorandum in Support of Final Approval and related matter, including any response to any objection. |
| _____, 2020<br>[120] days after Preliminary Approval Date] | Fairness Hearing |

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court (1) determine under Rule 23(e)(1) that it is likely to approve the Settlement and certify the Settlement Class; (2) direct notice to the Class

32

through the proposed notice program; and (3) schedule the final approval hearing under
Rule 23(e)(2).

Respectfully submitted,

Dated:      May 1, 2020                                   LAW OFFICES OF YOLANDA HUANG


By:   /s/ Yolanda Huang_____
YOLANDA HUANG

*Attorneys for Zayas, et al. Plaintiffs &
DIONN TAYLOR, individual Plaintiff*


Dated:      May 1, 2020                                   DENNIS J. HERRERA
City Attorney, San Francisco
MEREDITH B. OSBORN
Chief Trial Deputy
KAITLYN MURPHY
Deputy City Attorney


By:/s/ Kaitlyn Murphy
KAITLYN MURPHY
Deputy City Attorney
***Joining in only Section IIB of the
Motion: Defendants' Position***


Under N.D. Cal. Local Rule 5-1(i)(3), I attest that I obtained concurrence in the filing of this
document from Kaitlyn Murphy on May 1, 2020.

By:   _/s/ Yolanda Huang_____
YOLANDA HUANG