UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDIDO ZAYAS, et al., <br><br>  Plaintiffs, <br><br> v. <br><br> SAN FRANCISCO SHERIFF'S DEPARTMENT, et al., <br><br>  Defendants. | Case No. 18-cv-06155-JCS <br><br> Related Case Nos. 18-cv-04857-JCS ("*Taylor*") and 18-cv-04890-JCS ("*Johnson*") <br><br> **ORDER DENYING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITHOUT PREJUDICE** <br><br> Re: Dkt. No. 86 |

## I. INTRODUCTION

Presently before the Court is the parties' Joint Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 86) (hereinafter, "Renewed Motion for Approval"). This is the parties' second request for preliminary approval of a class action settlement in this case. The Court denied the first such motion (Dkt. No. 68) (hereinafter, "Initial Motion for Approval") on the basis that the San Francisco Board of Supervisors ("Board of Supervisors") had not approved the settlement agreement and therefore the motion was premature. At the May 29, 2020 motion hearing, the Court also identified a number of deficiencies in the settlement agreement, one of which was that its terms were not fully set forth in a single document. Instead, the parties pointed to the Full and Final Release that had been signed by the named Plaintiffs, agreeing to release their claims against the City and County of San Francisco ("the City") in return for a payment to the class of $2.1 million, with other terms of the agreement contained only in the parties' motion papers.

Since the May 29, 2020 hearing, several case management conferences have been held,

1   during which the parties have addressed possible approaches to settling all three of the related
2   cases, *Zayas* (a putative class action), *Johnson* (a multi-plaintiff case) and *Taylor* (a single plaintiff
3   action in which the plaintiff was initially unrepresented but is now represented by counsel for the
4   *Zayas* plaintiffs). The parties have agreed that the *Johnson* and *Taylor* cases will be dismissed
5   and that the plaintiffs in those case will become members of the *Zayas* class. Thus, the Court
6   intends to dismiss those cases without prejudice when it grants preliminary approval of the
7   settlement agreement in *Zayas*, conditional upon the Court entering final approval of the
8   settlement within an appropriate time period. The Court is unable, however, to grant preliminary
9   approval to the settlement agreement that has been presented with the Renewed Motion for
10  Approval, *see* Renewed Motion for Approval, Ex. A ("Settlement Agreement"), because of its
11  many deficiencies, addressed below.

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement by a certified class. Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights," *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, a settlement should only be approved if it is "fundamentally fair, adequate, and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted). In determining whether the proposed settlement meets this standard, the Court does not have the ability "to delete, modify, or substitute certain provisions . . . . The settlement must stand or fall in its entirety." *Id*. Due to the dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

### B. Discussion

The parties have been engaging in serious, informed and non-collusive negotiations for over a year in order to reach a settlement in this case, and the general terms of the agreement (to the extent the Court can determine what those terms are from the papers that have been filed to date) appear to be within the range of possible approval. In particular, the overall amount of the settlement appears to fall in the range of what is reasonable in light of the factual and legal issues raised in the case and the size of the class. There is much, however, that is unclear in the Settlement Agreement, or that appears to be inconsistent with the agreement that the parties have described in their papers and to the Court. As the parties have represented that they are interested in revising the agreement to obtain the Court's approval, the Court identifies these problems below.

#### 1. Problems With Terms of the Agreement

**Settlement Class Definition**: The Settlement Agreement contains multiple definitions of the class and they are inconsistent. Paragraph 14 states that the parties "stipulate to certification of the following class for purposes of settlement: All inmates who were housed in San Francisco County Jail 4, located at 850 Bryant Street, who were housed Housing Blocks A, B, or C, in a cell that was impacted by the sewage overflows which took place between January 3, 2017 and **September 15, 2018**." Paragraph 6 states that "[t]he class is defined as all inmates who suffered a direct or indirect impact from the sewage overflows while housed at County Jail 4, located at 850 Bryant Street during the period of January 3, 2017 to **September 30, 2018**." Paragraph 27 sets forth yet another definition, providing that "Class Member is defined as: All inmates who

3

were housed in San Francisco County Jail 4, located at 850 Bryant Street, who were housed Housing Blocks A, B, or C, in a cell that was impacted by the sewage overflows which took place between January 3, 2017 and September 15, 2018, **and have not filed individual claims**." In addition to the inconsistent end-dates, the condition included in Paragraph 27 appears to exclude the plaintiffs in *Taylor* and *Johnson*, contrary to the intentions stated by counsel in their papers and in open Court. The parties need to agree on a single definition of the class definition that accurately reflects their agreements as to the handling of the *Johnson* and *Taylor* cases. In defining the classes, counsel should keep in mind that the Court will only grant preliminary approval of the class action settlement if it determines that the settlement class can be certified under Rule 23.

**Procedure for Establishing Class Membership**: Closely related to the insufficient class definition is the fact that the Settlement Agreement does not include a mechanism for determining class membership or allowing putative class members to challenge determinations as to whether or not they are class members. The Court notes that counsel for the *Johnson* plaintiffs has stipulated that based on the data provided by the City, "a total of 135 out of the 213 named Johnson plaintiffs were inmates in County Jail 4 [and] were negatively impacted by sewage." Docket No. 84 ("Stipulation") at 8. In other words, 78 of those individuals apparently *believe* they were negatively impacted but do not show up in the records that have been produced by the City. It is not clear how such individuals will be treated under the Settlement Agreement or what recourse they will have (if any) if they are determined to be outside of the settlement class based on the records that have been provided by the City. As *Zayas* counsel has noted, word of mouth and planned outreach efforts will likely result in significant interest on the part of putative class members in the Settlement Agreement. It is particularly important, therefore, that the Settlement Agreement provide a clear definition of the settlement class and a fair and efficient mechanism for resolving disputes that may arise as to whether these individuals are entitled to receive a share of the settlement.

**Contingency Provision (Paragraph 11)**: Paragraph 11 of the Settlement Agreement makes the agreement conditional on approval by the Board of Supervisors. As the Board of

4

Supervisors has already approved the settlement, this provision appears to be superfluous.

**Description of Payout Amounts**: Paragraph 55 purports to describe the amounts class members in the three subclasses will receive under the Settlement Agreement but does not offer a clear explanation of how each class member's share of the settlement proceeds will be calculated. First, it describes a flat-rate calculation that will be awarded to class members based on the number of days of exposure, type of exposure (direct or indirect) and whether they filed grievances but then goes on to state that class members will receive a pro rata share of the settlement. As described, these two methods of calculating the amount each class member will receive are not consistent. Second, the section states that attorneys' fees and costs will be deducted from the recovery of members of Subclasses A and B but does not state how each class member's share of fees and costs will be calculated. Third, the per-incident amount stated in the Settlement Agreement for Subclass C members ($5.15.12) is likely to confuse class members and should be stated in dollars and cents only. Finally, the meaning of Paragraph 55(d), providing for a $15 "check waiver" is unclear. The parties explained at the motion hearing that this provision is aimed at the second round of checks to be distributed to class members. If the parties wish to include this provision in the amended settlement agreement, they need to revise it to make clear what it means. As written, the Court cannot determine whether this provision is reasonable.

In order to address the problems identified above, the parties need to provide a clear and complete description of how each class member's payment amount will be calculated, including how their share of any deduction for attorneys' fees and costs will be calculated. To the extent that the parties envision two rounds of payments to class members, the amended settlement agreement must describe the method that will be used to calculate the amount for each round. Finally, as discussed above in connection with class membership, the Settlement Agreement must include a mechanism that will allow class members to challenge the accuracy of these calculations and to have those challenges resolved promptly and efficiently.

**The Attorneys' Fees Provision:** Paragraph 84 of the Settlement Agreement states, in part, as follows: "The parties agree to request that the Court approve attorneys fees not to exceed 33% of the settlement amount with 50% of the attorneys fees going to the Law Office of Yolanda

Huang and 50% of the attorneys fees jointly going to attorneys Stanley Goff and Fulvio Cajina**."** While this provision falls within the range of possible approval, it is not consistent with statements elsewhere in the parties' papers suggesting that they agreed to request total attorneys' fees in the amount of $660,000, which is 31.4% of the total settlement amount and not 33% as stated in the Settlement Agreement. *See* Renewed Motion for Approval at 22;   Gough Decl. iso Renewed Motion for Approval ¶ 5.   In other words, it is not clear that the parties have agreed to the percentage stated in the Settlement Agreement.

**References to Claims:  A**lthough the parties have agreed that it will not be necessary for class members to file claims to participate in the settlement, Paragraph 24 of the Settlement Agreement defines "Approved Claim" as "a claim submitted no later than the Bar Date by a Class member."   This provision is not consistent with the parties' agreement. (The Court notes that the proposed notice also incorrectly states that class members must submit a timely and valid claim to receive payment. Huang Decl. iso Renewed Motion for Preliminary Approval, Ex. A, § 4.7).

**Release of Class Member Claims:**   The release for class representatives is found in Paragraph 98 of the Settlement Agreement.   Paragraphs 90 and 91 also include a waiver of California Civil Code section 1542 by class representatives.   The Settlement Agreement does not appear to include a release for absent class members, however, despite the statement in the Renewed Motion for Approval stating that "[t]he Claims To be Released include all claims by the class members, which are defined to include the inmates housed in Cell Blocks A, B and C of the former County Jail 4."   Renewed Motion for Approval at 20.   When the Court asked the parties at the motion hearing to point to a release in the Settlement Agreement that covers the absent class members (as opposed to the class representatives), they were unable to do so.   Based on the history of this case, it is clear that the agreement that was approved by the Board of Supervisors included a release that would cover all class members who do not opt out of the class.   The omission of such a release from the Settlement Agreement appears to have been an error.

**Inadequate Protections for Class Members:**   As has been the subject of extensive discussion between counsel and the Court, the nature of the class in this case has made it difficult to find and communicate with class members.   In particular, many class members are incarcerated

6

and have been transferred from one prison to another since these cases were filed; other class members are no longer incarcerated but may not have a stable address or live at an address that is different from the one that is on record with the City. This problem was highlighted when numerous individuals who had asked to be plaintiffs in the *Johnson* case could not be found when it came time to obtain signed releases in connection with the proposed settlement agreement. In light of these difficulties, and the likelihood that a significant portion of the class will not receive prompt notice despite the efforts of Plaintiffs' counsel and the claims administrator to find them, the Court concludes that the Settlement Agreement must include special protections for class members who receive late notice of the settlement. In particular, the Settlement Agreement should include a reserve fund for class members who do not learn of the Settlement Agreement until after the initial round of payments has been made. The parties should also consider allowing class members more than six months to cash their checks. Finally, the timing of any additional disbursements of settlement funds after the initial round of payments should take into account the need to protect class members who receive late notice of the settlement agreement.

### 2. Claims Administrator

The Court continues to have grave concerns (also expressed at the May 29, 2020 motion hearing) as to whether the proposed claims administrator, Greenfire Law, is qualified to administer the parties' settlement agreement. Despite the concerns that were expressed by the Court at the previous motion hearing, the claims administrator has not offered any additional information suggesting that it has ever administered a class action – much less one as complicated as the one here – or that it has the expertise to do so. Counsel represented to the Court that experienced claims administrators were not interested in taking on the job because of the special challenges that administering the settlement agreement in this case presents. It is for this very reason, however, that it is essential that Plaintiffs retain a claims administrator with the experience required to meet these challenges, even if doing so may increase the cost of claims administration.[1] At the hearing, counsel agreed to make further efforts to find an experienced

---

[1] The Court cannot determine based on the current record whether Greenfire's estimate of $100,000 for claims administration is reasonable.

settlement administrator.

### 3. Class Notice

When the parties revise the Settlement Agreement, they must also draft a revised notice that accurately reflects the terms of the amended settlement agreement. In addition, a number of deficiencies in the current proposed notice need to be corrected. First, as discussed at both the May 29, 2020 and January 15, 2021 motion hearings, in order to give class members sufficient notice to decide whether or not to opt out of the class, the notices that are mailed and/or emailed to individual class members should include not only an explanation of how class member payment amounts will be determined but also the estimated dollar amount that each class member will receive under the settlement agreement on the first round of payments, including: 1) an estimate of the amount each class member will receive based on the number of incidents of exposure and whether they filed a grievance; and 2) an estimate of the amount that will be deducted for attorneys' fees and administrative costs, if applicable. The members should also be informed that there may be a second round of payments, although the notice need not provide an estimated dollar amount as to the second payment. Likewise, the notice does not need to include the dollar amount of any deduction that will be taken out of a class member's payment for restitution. However, the notice must make clear that any restitution that the Office of Victim and Survivor Rights determines a class member owes will be deducted from the class member's payment. In addition, the notice should provide the overall dollar amounts that will be requested for attorneys' fees and administrative costs consistent with the terms of the settlement agreement. Finally, the notice must explain how individuals can challenge determinations about whether they are members of the class and the calculation of the individual amount they will receive.

The notice must also accurately describe any release of class member claims that will result from remaining in the class rather than opting out. The Court notes that the current proposed notice quotes sections described as 10.1 and 10.2 that purport to be the releases in this case, but the Settlement Agreement attached to the Renewed Motion for Approval does not contain such sections.

As discussed above, the proposed notice contains a section (§ 4.7) stating that class

members will need to file a simple claim form, but the parties have agreed that the Settlement Agreement will not require class members to file claims (as is accurately reflected on page 6 of the proposed notice, where class members are informed that they will automatically receive a check if they don't opt out of the class). This section should be revised or removed.

The proposed notice includes a statement that the Clerk's Office is open from 9 a.m. and 4:00 p.m. As the Clerk's Office is not currently open to the public due to the public health emergency and it is unclear when the Clerk's Office will be open to the public, this statement should be removed from the proposed notice.

Section 1.8 of the proposed notice states that the Court's Order Certifying the Class will be posted on the case website. This statement is likely to cause confusion as there will be no order with that title; rather there will be an order granting preliminary approval of the class action settlement and an order granting final approval, each of which will address whether the settlement class is certifiable. To avoid confusion, the proposed notice should leave a blank for the title of order it seeks to reference, which can be filled in with the exact title of the Court's order once it has been filed.

Section 3.1 of the proposed notice states that the amount class members will receive will be calculated "as follows" but does not go on to describe how the amounts will be calculated. As discussed above, the notice must contain a clear explanation of how class member shares are to be calculated as well as an estimate of the dollar amount each class member will receive on the first round of payments.

The Court also finds that the notice must be in both English and Spanish in order to ensure the best notice practicable under Rule 23. The parties do not dispute that many class members speak Spanish as their primary language. As class notice must be given "in a manner that does not systematically leave any group without notice," *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982), these members should receive their notice in Spanish. (Similarly, the telephone hotline for the case should make provision for callers who need to speak to Spanish-speaking operators to answer their questions.)

### 4. Schedule for Final Approval

When the parties submit a proposed schedule for obtaining final approval of their amended settlement agreement, they should include deadlines for individuals to challenge determinations as to class membership and payment amounts.  They should also include in the schedule a motion for attorneys' fees and costs (which must be filed at least thirty days before the deadline to opt out of the class).  (The motion for final approval may be filed after the opt-out deadline as the number of opt-outs is one of the factors the Court will consider in determining whether to approve the settlement agreement).

## III. CONCLUSION

For the reasons stated above, the Renewed Motion for Approval is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated:  January 18, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge