LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
E-Mail: yhuang.law@gmail.com

STANLEY GOFF (Bar No. 289564)
LAW OFFICE OF STANLEY GOFF
15 Boardman Place Suite 2
San Francisco, CA 94103
Telephone: (415) 571-9570
Email: scraiggoff@aol.com

Fulvio F. Cajina, Esq. (SBN 289126)
LAW OFFICE OF FULVIO F. CAJINA
528 Grand Ave.
Oakland, CA 94610
Telephone: (415) 601-0779
Email: fulvio@cajinalaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO/OAKLAND DIVISION

Jurisdiction

| | |
|---|---|
| CANDIDO ZAYAS, RUBEN SOTO, ALFREDO RUIZ, JOSE POOT, MILTON LECLAIRE, NIGEL HENRY, RALPH DOMINGUEZ, MATTHEW BRUGMAN , MICHAEL BROWN, KISHAWN NORBERT, MARK EDWARD HILL, AND JAMES CLARK,<br><br>　　　　Plaintiff, | CASE NO.: 3:18 -CV-06155<br><br>NOTICE OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, THE PLAN OF ALLOCATION AND ATTORNEYS FEES AND COSTS, MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Related Case No.  3:18-cv-04890-JCS |

vs.

SAN FRANCISCO COUNTY SHERIFF'S
DEPARTMENT, CITY AND COUNTY OF
SAN FRANCISCO, SAN FRANCISCO
SHERIFF VICKI HENNESSEY; UNDER
SHERIFF MATHEW FREEAN; CHIEF
DEPUTY SHERIFF PAUL MIYAMOTO;
CAPTAIN JASON JACKSON, SARGEANT
DOLLY and John & Jane DOEs, Nos. 1 - 50.

(Johnson)
Related Case No. 18-cv-04857 JCS (Taylor)


Date:  Sept. 3, 2021
Time: 9:30 a.m.
Courtroom:  F, 15th Floor

Hon.: Joseph C. Spero, presiding

**PLAINTIFFS' POINTS AND AUTHORITIES FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION AND ATTORNEYS FEES AND COSTS**

*Zayas, Et Al. V. San Francisco County Sheriff's Department Et Al.,*   United States District Court, Northern District Of California, Case No.3:18-Cv-06155

## Table of Contents

A.   THE SETTLEMENT MERITS FINAL APPROVAL BY THE COURT..................1

1.   Plaintiffs And Lead Counsel Have Adequately Represented The Settlement Class ..2

2.   The Settlement Was Reached After Substantial Discovery And Arm's-Length
     Negotiations       Between Experienced Counsel .......................................3

3.   The Relief That The Settlement Provides For The Settlement Class Is Adequate,
     Taking Into Account The Costs And Risks Of Further Litigation And All Other
     Relevant Factors....................................................................................5

4.   The Settlement Treats Class Members Equitably Relative To Each Other ...............8

5.   The Reaction Of The Settlement Class To The Settlement ........................................8

B.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE............................9

C.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED...................10

D.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE
     REQUIREMENTS OF RULE 23 AND DUE PROCESS .......................................10

E.   THE ATTORNEYS' FEES REQUESTED ARE FAIR, REASONABLE AND
     ADEQUATE.............................................................................................12

1.   Percentage of the Fund Method of Calculating Fees ................................................13

2.   Lodestar Standards...................................................................................................14

F.   CONCLUSION............................................................................................................15

<u>CASES</u>

*Bluetooth Headset Products Liab. Litig.* 654 F.3d 935 (9th Cir. 2011) --------------------------- 13

*Blum v. Stenson*, 465 U.S. 886 (1984) ------------------------------------------------------------ 14

*Camden I Condominium Association v. Dunkle,* 946 F.2d 768 (11th Cir. 1991) --------------- 13

*Churchill Village L.L.C. v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004);------------ 2, 10

*City of Riverside v. Rivera*, 477 U.S. 561 (1986)------------------------------------------------ 14

*Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) --------------------- 14

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, 2016 WL

537946 (N.D. Cal. Feb. 11, 2016).------------------------------------------------------------- 5, 12

*Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014)----- 4, 10

*Gamer v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010)

-------------------------------------------------------------------------------------------------1

*Hanlon v. Chrysler Corp*, 150 F.3d 1010, 1026 (9th Cir. 1998);-------------------------------2, 3, 5

*Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011 ---------------------------------------6

*Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21,

2016) ------------------------------------------------------------------------------------------ 12

*Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, 851 F.Supp. 2d 1040

(S.D. Tex. 2012)------------------------------------------------------------------------------- 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ------------------------------------------------------ 14

*In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); --------------4

*In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d 935, 947(9th Cir. 2011) ---------------------5

*In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ----------------4

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006)------------------------------------3

*In re Quinus Security Litigation*, 148 F.Supp. 2d 967 (N.D. Cal. 2001) ------------------------- 14

*In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); ----------------------------------1

*Knapp v. Art.com, Inc*., 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).-------------------------------6

*Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012). --------------------------------------2

*Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ------------4

*Luna v. Marvell Tech. Grp*., 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) -------------- 10

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ---------4

*SeeLerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978); ------------------3

*Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014)------5

*Spann v. J.C. Penney Corp*., 314 F.R.D. 312, 330 (C.D. Cal. 2016 ----------------------------- 11

*Stewart v. Applied Materials, Inc.,* 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) --------4

*Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370,1376 (9th Cir. 1993). ----------------------------6

## STATUTES

Advisory Committee Notes to 2018 Amendments --------------------------------------------------2

Federal Rule Civ. Proc. 23(a) ---------------------------------------------------------------------- 10

Federal Rule Civ. Proc 23(b)(3) -------------------------------------------------------------------- 10

Federal Rules Civ. P. 23(c)(2)(B --------------------------------------------------------------- 10, 12

Federal Rules of Civ. Proc 23(e)(2) -------------------------------------------------------------1, 2

Federal Rule Civ. Proc. 23(e)(2)(A). ---------------------------------------------------------------2

Federal Rule Civ. Proc. 23(e)(2)(B). ---------------------------------------------------------------3

Federal Rule Civ. Proc. 23(e)(2)(C)---------------------------------------------------------------5, 7

Federal Rule Civ. Proc.. 23(e)(2)(C)(iv). -----------------------------------------------------------7

Federal Rule Civ. Proc. 23(e)(3)." -----------------------------------------------------------------7

<u>T</u>REATISES

*Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17
Rev. Litig. 525, 534 (1998) ("Silber and Goodrich------------------------------------------------- 13

Federal Judicial Center, T. Willging, L. Hooper, & R. Niemic, *Empirical Study of Class
Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil
Rules* (1996)--------------------------------------------------------------------------------------------13, 14

Silber and Goodrich*, Common Funds and Common Problems: Fee Objections and Class
Counsel's Response*, 17 Rev. Litig. 525, 534 (1998)------------------------------------------------ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    THE SETTLEMENT MERITS FINAL APPROVAL BY THE COURT**

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class-action claims. See Fed. R. Civ. P. 23(e). A class-action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); see also *In re Omnivision Techs*., Inc., 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits"). Class- action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of cases with significant numbers of class members, such as this one, greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. See, e.g., *Gamer v. State Farm Mut. Auto. Ins. Co*., 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("'Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.'").

Rule 23(e)(2), as amended on December 1,2018, provides that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As discussed below, all of these factors strongly support approval of the Settlement here.

To evaluate the substantive fairness of a settlement, courts in the Ninth Circuit have historically considered the following factors established in cases such as *Hanlon v. Chrysler Corp.* and *Churchill Village L.L.C. v. General Electric*:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d 566, 575 (9th Cir. 2004); see also *Hanlon*, 150 F.3d 1010, 1026 (9th Cir. 1998); *Lane v. Facebook, Inc*., 696 F.3d 811, 819 (9th Cir. 2012).

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the four factors provided in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments.

Accordingly, Plaintiffs discuss below the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors provided in Rule 23(e)(2) but also discuss the application of relevant, non-duplicative Hanlon factors.

### 1.   Plaintiffs And Lead Counsel Have Adequately Represented The Settlement Class

In determining whether to approve a class-action settlement, the Court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

Here, both Plaintiffs and Lead Counsel have adequately represented the Settlement Class in both the litigation and the Settlement.   ASHERS and Miami Police have claims that are typical of and coextensive with those of the Settlement Class, and they lack any interests that are antagonistic to the interest of other members of the Settlement Class. SeeLerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978); Hanlon, 150 F.3d at 1020. On the contrary, Plaintiffs—like all other Settlement Class Members—have an interest in obtaining the largest possible recovery from Defendants. See In re Polaroid ERISA Litig., 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").   Plaintiffs have also retained counsel who are highly experienced in conditions of confinement litigation and have successfully prosecuted class actions regarding conditions of confinement matters.  Dec. Y. Huang (Dkt. 92-8)   Lead Counsel has vigorously prosecuted the Settlement Class's claims to date by extensive interviews with class members, investigation into the underlying facts of the case, and engaging in extensive discovery.

Accordingly, as the Court previously found in conditionally certifying the Settlement Class and appointing Plaintiffs as Class representatives and Lead Counsel as Class counsel, Plaintiffs and Lead Counsel have adequately represented the Settlement Class. See Preliminary Approval Order, ECF No. 104.

### 2.    The Settlement Was Reached After Substantial Discovery And Arm's-Length Negotiations Between Experienced Counsel

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts have traditionally considered other related circumstances in determining the "procedural" fairness of a settlement, including (i) counsel's understanding of the strengths and weakness of the case based on factors such as "the extent of discovery completed and the stage of the proceedings";[1] (ii) the "experience and views of counsel";[2] and (iii) the absence of any indicia of collusion.[3]  These circumstances strongly support the approval of the Settlement here.

As courts in this District have found, the fact that the Parties reached the Settlement after arm's- length negotiations between experienced counsel creates a presumption of its fairness. See *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non- collusive, arms' length negotiations conducted by capable and experienced counsel"); *Stewart v. Applied Materials, Inc.,* 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) (in deciding whether to approve a proposed class-action settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness"); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), aff'd, 151 F.3d 1234 (9th Cir. 1998).

Indeed, the Settlement merits a presumption of fairness because it was achieved after arm's-length negotiations between well-informed and experienced counsel after a substantial amount of discovery was completed in the Action. See *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) (finding that "a settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."); *Eisen v. Porsche Cars N. Am., Inc*., 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement when record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses").

Settlement was achieved after significant discovery.  Plaintiffs, who have a substantial financial interest in the outcome, actively supervised the litigation, strongly endorsed the

---

[1] *See Hanlon,* 150 F.3d at 1026 (fifth factor).

[2] *See id.* (sixth factor).

[3]  See In re Bluetooth Headset Prods. Liab. Litig., *654 F.3d 935, 947 (9th Cir. 2011).*

Settlement. See Dec. Y. Huang §9.   Further, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a clear-sailing fee agreement or a provision that would allow settlement proceeds to revert to Defendants. See *In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d 935, 947(9th Cir. 2011) . In short, the Settlement here was reached after arm's- length negotiations by capable counsel and was not a product of fraud, overreaching, or collusion among the Parties.

### 3.   The Relief That The Settlement Provides For The Settlement Class Is Adequate, Taking Into Account The Costs And Risks Of Further Litigation And All Other Relevant Factors

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account... the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This factor under Rule 23(e)(2)(C) essentially encompasses four of the seven factors of the traditional Hanlon analysis: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in settlement. See *Hanlon*, 150 F.3d at 1026. As demonstrated below, each of these factors supports approval of the Settlement under Rule 23(e)(2)(C).

a.   The Amount Offered In Settlement

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.,* 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016).

In assessing the recovery, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they 615, 624 (9th Cir. 1982); see also *Shapiro v. JPMorgan Chase & Co*., 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (holding that settlement amount must be judged "not

in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Here, the Settlement Amount - $2.1 million in cash – represents a significant recovery for the Settlement Class.  More importantly, the proposed recovery would provide a substantial financial benefit to the Settlement Class in comparison to overall potential damages and eliminate the significant risk that the Settlement Class could recover less, or even nothing at all, if the Action continued.  When viewed in the challenges in obtaining affirmative recoveries in conditions of confinement cases, and the amount of the recoveries, particularly where permanent injuries, or disabilities did not result, context of the recoveries from other conditions of confinement cases, and the recovery obtained in this case is extremely favorable to the Settlement Class.

b.  The Strengths of Plaintiffs' Case and the Risks of Continued Litigation

Courts evaluating proposed class-action settlements consider the strength of the plaintiffs' case and the risks of further litigation. See *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370,1376 (9th Cir. 1993). To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiffs case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc*., 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

The issues in this case involved the requirements of the Prison Litigation Reform Act, the requirements of exhaustion of administrative remedies, and the claim by defendants that their conduct did not exhibit "deliberate indifference".

Examining these barriers, and along with Plaintiffs' commitment to obtaining a recovery for as inclusive a Settlement Class as possible, tipped the balance toward settlement.  Barring settlement, there is no question that resolution of this case would take considerable time and require additional expenses, with the end result far from certain. See *Hartless v. Clorox Co*., 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate

and certain recovery for class members ... favors settlement of this action."), aff'd in relevant part, 473 F. App'x 716 (9th Cir. 2012).

### c. All Other Factors Established By Rule 23(e)(2)(C) Support Approval Of The Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)."

First, the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well established, effective methods. Here, the proceeds of the Settlement will be distributed to Settlement Class Members without the need for Class Members to submit Claim Forms.   The identity of Class Members is verified by defendants' own records, supported by defendants' contact information for all  Class Members.

Second, the relief provided for the Settlement Class in the Settlement is also adequate when the terms of the proposed award of attorney's fees are taken into account. As discussed in the accompanying Fee Memorandum, the proposed attorneys' fees of 33% of the Settlement Fund (net of litigation expenses), to be paid upon approval by the Court, are reasonable in light of the efforts of Plaintiffs' Counsel and the risks in the litigation.   The dollar figure for attorneys fees is actually less than what class members would have received if the Johnson mass tort action had been maintained as a separate action.  Instead, by folding all three related cases into one, significant savings are possible through a unified rather than separate claims administration. Lastly, the amended Rule 23 asks the Court to consider the proposed Settlement's fairness in light of any agreements required to be identified under Rule 23(e)(3). See Fed. R. Civ. P. 23(e)(2)(C)(iv).   The Settlement is not a claims-made settlement.  If the Settlement is approved, Defendants will have no right to the return of any portion of the Settlement based on the number or value of claims submitted.  There are no other agreements, and the ones identified herein

facilitate Class Members receiving their settlement distribution and have no negative impact on the fairness of the Settlement.

**4.     The Settlement Treats Class Members Equitably Relative To Each Other**

The proposed Settlement treats members of the Settlement Class equitably relative to one another.

Plaintiffs will receive precisely the same level of pro rata recovery (based on their Recognized Claims as calculated under the Plan of Allocation) as all other similarly situated Settlement Class Members.  Plaintiffs will not receive an incentive award.

**5.     The Reaction Of The Settlement Class To The Settlement**

Local Rules require that a motion for final approval briefing should include:  1) information about the number of undeliverable class notices and claim packets, 2) the number of class members who submitted valid claims, 3) the number of class members who elected to opt out of the class, and 3) the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.

In accordance with the Preliminary Approval Order, Greenfire Law  mailed a total of 2,571copies of the Notice Packet (consisting of the Claim Form in English and  Spanish) to Settlement Class Members on June 16, 2021. *See* Declaration of Rachel Doughty. §1.  In addition, on June 16, 2021, the Notice (English and Spanish) was uploaded onto the class action website (SFsewageclassaction.com)

The Notice states the essential terms of the Settlement and informs potential Settlement Class Members of, among other things, their right to opt out of the Settlement Class or object to the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's proposed attorneys' fees and expenses. The deadline set by the Court for Class Members to exclude themselves or object to the Settlement is August 9, 2021.  The fairness hearing is scheduled for September 3, 2021.  To date, zero (0) requests for exclusion have been received and no notices of objections have been received.  The claims administrator receive two (2) challenges to the amount which the Notice

notified him of his settlement allocation.

**B.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

The plan of allocation was developed through significant negotiations with the assistance of Magistrate Judge Corley.  Plaintiffs and Plaintiffs' Counsels believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action. Due to the issue of exhaustion of administrative remedies, two main classes were developed between those for whom verified grievances were documented, and those for whom grievances were absent.  In addition, an additional sub-class was added for inmates who were in the subject cell blocks, but whose cells, as a result of a particular sewage spill, did not receive documented direct sewage spills.  Plaintiffs with their counsels believed that even though inmates suffered indirect impacts, these indirect impacts merited compensation due to the lack of drinking water and toilet facilities during the extended and frequent duration of these sewage spills.  However, fairness dictated that those inmates who suffered direct impacts and who filed grievances should receive a higher rate of compensation because of the direct sewage impact in an inmate cells was a more significant impact and also because the filing of grievances were major contributing factors in both the instigation of this litigation and in prompting defendants to finally repair the problem.  In addition, after discussion with Plaintiffs, plaintiffs agreed to waive an incentive award, in order for there to be greater equity; that all plaintiffs would receive the amount per the same formula as every other class member.   For all of these reasons, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.

Moreover, as of June 16, 2021, 2,571 copies of the Notice (English and Spanish), which contains the Plan of Allocation, advises Settlement Class Members of their right to object to the Settlement, to be excluded from the Settlement, along with an individualized letter providing the best estimate for their potential settlement payment (without deduction for any restitution owed) have been mailed to potential Settlement Class Members, see Doughty Decl. §§2,3.  To date, 160

Notices were returned for insufficient address.  Four (4) class members requested notices and provided corrected addresses.  Nineteen (19) class members have provided special handling instructions.  Seven non-class members made inquiries.  Zero exclusion forms have been received.  No objections were received.  Two challenges to the allocated settlement amount were received and responded to.  For all of these reasons, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.

## C.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's Preliminary Approval Order conditionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement. ECF No. 5593 at 1-4. For all of the reasons stated in the Preliminary Approval Order and Plaintiffs' Preliminary Approval Motion (ECF No. 5267 at 8-15), Plaintiffs respectfully request that the Court grant final certification of the Settlement Class under Rules 23(a) and (b)(3). See Preliminary Approval Order (ECF No. 5593) at 1-4 (analyzing how the Action satisfies each element for class certification).

## D.     NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice provided to the Settlement Class satisfied all the requirements of due process, Rule 23.   For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); see also *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). In addition, the Court must direct notice of a settlement in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e)(1). Notice of a class-action settlement "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." See *Churchill*, 361 F.3d at 575; *Luna v. Marvell Tech. Grp*., 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (same); *Spann v. J.C. Penney Corp*., 314 F.R.D. 312, 330 (C.D.

Cal. 2016) ("Settlement notices must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfied these standards here. First, Lead Counsel sent a postcard to all known addresses for potential class members in July of 2020.  Through the return addresses received from the post office, Class  Counsel was able to research and obtain additional more current addresses.  In addition, through interviews with plaintiffs and class members, Class Counsel determined that additional notice through social media would be the most effective means of outreach rather than through print or publication.

The Notice, as approved by the Court in the Order for Preliminary Approval of the Settlement, provides the necessary information for Class Members to make an informed decision regarding the Settlement and contains all of the information required by Rule 23(c)(2)(B), and this District's Procedural Guidelines for Class Action Settlements. The Notice informed Class Members of, among other things, (1) the nature of the Action and the claims asserted; (2) the definition of the Settlement Class; (3) the amount of the Settlement; (4) the reasons why the parties are proposing the Settlement; (5) the maximum amount of attorneys' fees and expenses that will be sought; (6)  the identity and contact information for the Claims Administrator who are reasonably available to answer questions from Settlement Class Members; (7) Settlement Class Members' right to opt out of the Settlement Class or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; (8) the binding effect of a judgment on Settlement Class Members; and (9) the dates and deadlines for Settlement-related events. The Notice also contains the Proposed Allocation and was in English and  Spanish.  Accompanying the Notice was an individualized letter informing each Class Member of the estimated amount of his recovery (before deduction of restitution).

In addition to mailing the complete English and Spanish Notice on  June 16, 2021,  In addition, Greenfire Law posted the Notice on the website:

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL, ALLOCATION AND ATTORNEYS FEES**
*Zayas, Et Al. V. San Francisco County Sheriff's Department Et Al.,*  United States District Court, Northern District Of California, Case No.3:18-Cv-06155

www.sanfranciscosewagelawsuit.com.  Class members had access to downloadable copies of the Notice in English and Spanish, the First Amended Complaint, the Motion for Preliminary Approval of the Settlement, the Settlement, and the Order Granting Preliminary Approval on the website and arranged for notice of the class action settlement to be publicized through targeted advertising to those individuals searching for services directed to the transient population in the San Francisco Bay Area Doughty Dec. §13).  For class members whose Notice was returned, there was no forwarding address provided, and the class member's award is in excess of $500, a private investigator has been retained to locate these individuals.  To date, there have been five (5) such searches.

This combination of individual first-class mail to all Settlement Class Members whose contact information was confirmed by defendants,  supplemented by outreach through popular social media,  was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see, e.g., *Hayes v. MagnaChip Semiconductor Corp*., 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (approving similar notice program); *Destefano v. Zynga, Inc*., No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, 2016 WL 537946, at *20 (N.D. Cal. Feb. 11, 2016). (finding individual notice mailed to class members combined with summary publication constituted "the best form of notice available under the circumstances"); *Portal Software*, 2007 WL 4171201, at *1.

In sum, the Notice, private investigator searches and social media advertisement methods fairly apprises Settlement Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, the Federal Rules of Civil Procedure, and due process.

**E.      THE ATTORNEYS' FEES REQUESTED ARE FAIR, REASONABLE AND ADEQUATE.**

When awarding attorneys' fees, the court has a duty to ensure that the claim for attorneys' fees, like every other provision in the settlement, is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

2011) ("courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount"); *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litig*., 851 F.Supp. 2d 1040, 1073 (S.D. Tex. 2012) (fee award considered reasonable if proportionate to actual value created for or received by class).

### 1.      Percentage of the Fund Method of Calculating Fees

Class Counsels request $660,000 in attorney's fees with 50% of the attorneys' fees going to the Law Office of Yolanda Huang and 50% of the attorneys' fees jointly going to attorneys Stanley Goff and Fulvio Cajina.  The parties also request the Court approve an award of litigation costs of $35,000 to the Law Office of Yolanda Huang. In the aggregate, Class Counsel request $695,000 in fees and costs. The requested attorneys' fee of $660,000 is 31.4% of the settlement amount. The general trend in class action fee awards is toward the percentage of the fund method. It avoids numerous drawbacks of the lodestar approach and is preferable because "the attorneys will receive the best fee when the attorneys obtain the best recovery for the class." Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (1998) ("Silber and Goodrich"). Therefore, this approach more closely aligns with the interests of the counsel and the class. *See, e.g,. Camden I Condominium Association v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991).

Nationally, the average percentage of the fund award in class actions is approximately one-third. The Federal Judicial Center published a report in 1996, which was based on an empirical study of four Federal District Courts. Federal Judicial Center, T. Willging, L. Hooper, & R. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* (1996) ("FJC Report"). The study found that the "fee recovery rate infrequently exceeded the traditional 33.3% contingency fee rate. Median rates ranged from 27% to 30%. Most fee awards in the study were between 20% and 40% of gross monetary settlement." *Id*. at 68-69. The Report concluded that "attorney's fees were generally in

the traditional range of approximately one-third of the total settlement." *Id.* at 90. Another study cited by Silber and Goodrich found that attorney's fees in class actions averaged approximately 32% of the recovery, regardless of the class size, and averaged 34.74% when the fees and expenses were added together. Silber and Goodrich, 17 Rev. Litig. at 545-46.

The total fees and costs included is 31.4% of the total award. Given the complexities of resolving three separate litigations, and the challenges of communications and working with a prisoner class, the attorneys fees requested is reasonable.

### 2.     Lodestar Standards.

The Northern District's Procedural Guidance for Class Action Settlements requires that attorneys fees should include a lodestar calculation.  Lodestar is defined generally as the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Where a plaintiff has obtained excellent results, his or her attorney should recover a fully compensatory fee. *Id.* at 435. Full compensation normally encompasses all hours reasonably expended on the litigation. *Id.  City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986).  *See also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (reasonable fees calculated according to prevailing market rates in the relevant community); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992) (the court should pay close attention to fees charged by lawyers of reasonably comparable skill, experience, and reputation).)

Courts often consider the following factors when determining the appropriate class fund fee award: (1) the result obtained for the class;(2) the effort expended by counsel; (3) the risks of non-payment assumed by counsel; (4) counsel's skill; (5) the complexity of the issues; (6) counsel's experience; (7) the reaction of the class; and (8) the comparison with counsel's lodestar. *See, e.g., In re Quinus Security Litigation*, 148 F. Supp. 2d 967, 973-74 (N.D. Cal. 2001). Here, the lodestar amount for lead counsel is 435 hours. Lead Class Counsel asserts that at the prevailing rate for someone of Yolanda Huang's experience, and an hourly rate of $675, with

paralegal costs included results in a lodestar of $371,700.   (See Declaration of Yolanda Huang) The fee award is clearly reasonable for lead Class Counsel. This case is unusual due to the related mass tort cases which have been folded into the class action lawsuit.  The costs of $35,000 reflect the costs incurred in

Similarly, co-counsel Stanley Goff and Fulvio F. Cajina expended hundreds of hours litigating this case. Messrs. Goff and Cajina at one point represented over 150 inmates in their individual capacities. Mr. Cajina has a lodestar amount of 302.5 hours. Mr. Goff has a lodestar amount of 430 hours. At hourly rates of $475 for both Mr. Cajina and Mr. Goff, their combined lodestar amount would be $347,937.50.  (See Declarations of Fulvio Cajina and Stanley Goff)

## F.   CONCLUSION

For the reasons stated in this memorandum and in the accompanying Declarations, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement. approve the Plan of Allocation, and approve the attorneys fees and costs requested.

Dated: July 19, 2021                          Attorneys for Plaintiffs

                                                      */s/ Yolanda Huang*
                                                      YOLANDA HUANG


                                                      */s/ Fulvio F. Cajina*
                                                      Fulvio F. Cajina


                                                      */s/ Stanley Goff*
                                                      STANLEY GOFF

POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL, ALLOCATION AND ATTORNEYS FEES
*Zayas, Et Al. V. San Francisco County Sheriff's Department Et Al.,*  United States District Court, Northern District Of California, Case No.3:18-Cv-06155